COULSON, APPELLEE, *v.* COULSON, APPELLANT.

[Cite as Coulson *v.* Coulson (1983), 5 Ohio St. 3d 12.]

(No. 82-525—Decided May 18, 1983.)

*Mr. Thomas A. Kondzer* and *Mr. Walter T. Spalding, Jr.,* for appellee.

*Messrs. Garofoli, Kraus, Hill, Roth & Bartunek, Mr. Anthony J. Garofoli, Mr. William J. Kraus* and *Mr. Gary S. Okin,* for appellant.

SWEENEY, J. The question presented in this appeal is whether the trial court abused its discretion in granting appellee relief from judgment pursuant to Civ. R. 60(B)(5). Civ. R. 60(B) states as follows:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment had been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order

or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.

"The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules."

The "any other reason" asserted by appellee under Civ. R. 60(B)(5) was that "the attorneys perpetrated such open and flagrant fraud upon the Court that no justice could have been rendered * * *."

Appellant contends "that 'fraud' be it denominated 'fraud upon the court' or 'fraud in taking judgment' is a ground for relief within the purview of Civil Rule 60(B)(3) [which must be brought within one year] and not Civil Rule 60(B)(5)." This contention is without merit.

The Staff Notes to Civ. R. 60(B) specifically negate appellant's contention. The drafters state as follows:

"* * * a court might utilize the catch-all provision [60(B)(5)] to vacate a judgment vitiated by a fraud upon the court. Fraud upon the court differs from Rule 60(B)(3), fraud or misrepresentation by an adverse party. * * *"

"Fraud upon the court" is an elusive concept. "The distinction between 'fraud' on the one hand and 'fraud on the court' on the other is by no means clear, and most attempts to state it seem to us to be merely compilations of words that do not clarify." *Toscano* v. *Commr. of Internal Revenue* (C.A. 9, 1971), 441 F. 2d 930, 933.

One commentator, however, had provided this definition: " 'Fraud upon the court' should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by the officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. Fraud, *inter partes,* without more, should not be a fraud upon the court, but redress should be left to a motion under 60(b)(3) or to the independent action." 7 Moore's Federal Practice (2 Ed. 1971) 515, Paragraph 60.33. See, also, *Serzysko* v. *Chase Manhattan Bank* (C.A. 2, 1972), 461 F. 2d 699; *Kupferman* v. *Consolidated Research & Mfg. Corp.* (C.A. 2, 1972), 459 F. 2d 1072, 1078; *Kenner* v. *Commr. of Internal Revenue* (C.A. 7, 1968), 387 F. 2d 689, 691. Accord *Hartford* v. *Hartford* (1977), 53 Ohio App. 2d 79, at pages 83-84.

It is generally agreed that "* * * [a]ny fraud connected with the presentation of a case to a court is a fraud upon the court, in a broad sense." 11 Wright & Miller, Federal Practice and Procedure (1973) 253, Section 2870. Thus, in the usual case, a party must resort to a motion under Civ. R. 60(B)(3). Where an officer of the court, *e.g.,* an attorney, however, actively participates in defrauding the court, then the court may entertain a Civ. R. 60(B)(5) motion for relief from judgment. See *Toscano, supra.*

Appellant contends in his first proposition of law that "[a] trial court abuses its discretion in granting an evidentiary hearing on a motion for relief from judgment pursuant to Civil Rule 60(B) of the Ohio Rules of Civil Procedure and in granting the motion where the evidentiary materials submitted

with the motion were insufficient to establish either the timeliness or the grounds of the motion."

In *Adomeit* v. *Baltimore* (1974), 39 Ohio App. 2d 97 [68 O.O.2d 251], which involved a claim for relief from a default judgment, the court stated at page 105:

"If the movant files a motion for relief from judgment and it contains allegations of operative facts which would warrant relief under Civil Rule 60(B), the trial court should grant a hearing to take evidence and verify these facts before it rules on the motion."

Appellee's motion and accompanying affidavit contained detailed allegations going to the execution of the separation agreement and Saltzer's role in the subsequent divorce action. Our review indicates that the trial court did not abuse its discretion in granting a hearing because under the rule of *Adomeit,* which this court hereby adopts, appellee's motion and supporting affidavit contained allegations of operative facts that would warrant relief under Civ. R. 60(B).

Appellant next argues that even if appellee's motion was properly brought under Civ. R. 60(B)(5), the courts below erred in concluding that a fraud had been perpetrated upon the domestic relations court. In the pre-rule case of *In re Estate of Wright* (1956), 165 Ohio St. 15 [59 O.O. 37], which is somewhat analogous to the case at bar, the court upheld a judgment vacating the final settlement of an estate for fraud upon the court. The relevant portion of paragraph three of the syllabus states:

"Where an attorney, who is administrator of an estate, enters into a contract with a claimant against such estate for a percentage of the proceeds which such claimant may receive from the estate, makes no disclosure of such arrangement to the Probate Court in whose jurisdiction such estate is being administered, and such court proceeds to confirm the final account of such administrator, which it probably would not have done had it known of the arrangement, such administrator thereby perpetrates a fraud upon the court, for which the order confirming the final account may be vacated * * *."

While the instant case involves a divorce action, not the administration of a decedent's estate, and there is no allegation that Saltzer had contracted for a percentage of the marital property, *Wright* is relevant because the domestic relations court approved the controverted separation agreement, "which it probably would not have done had it known of the arrangement [between appellant and Saltzer]." The court below noted that " 'the trial court is best able to determine whether a fraud has been perpetrated upon it. Consequently, the trial court's determination of the issue is entitled to great weight * * *.' " See *Hartford* v. *Hartford* (1977), 53 Ohio App. 2d 79, 85 [7 O.O.3d 53]. We agree.

In the instant case, the trial court was justified in its conclusion that Saltzer's conduct constituted a fraud upon the court by an officer thereof. The record reveals that: Saltzer was appellant's corporate counsel and the proceeding was initiated at appellant's request; while Saltzer testified that he

intended to act as a mere scrivener for the parties, he never advised Mrs. Coulson or the court of his limited representation; he did not independently analyze the separation agreement, nor did he know or inquire into what Mrs. Coulson understood; and, Saltzer drafted both the complaint and the answer which were filed with the court. As appellee notes, Saltzer's conduct violated DR 5-101, DR 5-105(A), (B) and (C), and EC 5-14, -15 and -16 of the Code of Professional Responsibility.[1]

Based on this record the trial court did not abuse its discretion in finding that a fraud had been perpetrated on the court.

Appellant also argues that even if appellee has stated an actionable cause for fraud upon the court, the motion, which was filed nearly twenty-seven months after the journal entry, was not filed within a "reasonable time." The evidence surrounding the fraud upon the court, as construed by the trier of fact is sufficient to support the conclusion that appellee's motion was filed within a reasonable time. Cf. *Wright, supra.*

Appellant further contends that the principles of *res judicata* barred the lower court from considering the subject motion, after having rejected two prior Civ. R. 60(B) motions. In support of this contention, appellant relies on *Brick Processors, Inc.* v. *Culbertson* (1981), 2 Ohio App. 3d 478, wherein the court stated in paragraph one of the syllabus:

"When a motion to vacate or for relief from judgment has been denied, principles of *res judicata* prevent relief on successive, similar motions raising issues which were or could have been raised originally."

Although *res judicata* is applicable to Civ. R. 60(B) motions, the court of appeals below concluded that the principles set forth in *Brick Processors, Inc., supra,* were inapplicable to the case at bar for two reasons. First, the subject motion did not rephrase issues previously raised. The prior motions sought relief from judgment on purely procedural grounds, wholly distinguishable from the contents of the subject motion. Second, the court of appeals concluded, and the record supports this conclusion, that it is not clear whether appellee knew the extent of the fraud upon the court when the previous motions were filed. The court of appeals properly concluded that *res judicata* does not bar a subsequent motion for relief from judgment when the subsequent motion is based on different facts, asserts different grounds for relief, and "it is not certain that * * * [the] issue 'could have been raised' in the prior motions."

Accordingly, we hold that pursuant to Civ. R. 60(B)(5) a court in appropriate circumstances may vacate a judgment vitiated by a fraud upon the court. We further hold that when an attorney files and signs a divorce complaint, purporting to represent the plaintiff in the action even though he drafted the complaint and accompanying separation agreement at the direction of and upon the terms dictated by the defendant in the same action, and he represents to the court that he is plaintiff's counsel and that the separa-

---

[1] Saltzer is no longer practicing law, having resigned in 1977.

tion agreement, which he had not examined for fairness and equity, is fair and equitable, and the court, in reliance on these representations, proceeds to approve the divorce and incorporate the separation agreement into the judgment, which it would not have done had it known of the arrangement between the attorney and the defendant, the attorney perpetrates a fraud upon the court, and a trial court does not abuse its discretion in granting relief from judgment pursuant to Civ. R. 60(B)(5).[2]

*Judgment affirmed.*

CELEBREZZE, C.J., HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

W. BROWN, and LOCHER, JJ., concur in judgment only.

WILLIAM B. BROWN, J., concurring in judgment only. In my opinion, no genuine conflict of law or fact existed between the judgment rendered by the Court of Appeals for Cuyahoga County in this case and the judgment rendered by the Court of Appeals for Franklin County in *Cautela Bros.* v. *McFadden* (1972), 32 Ohio App. 2d 329 [61 O.O. 2d 506], or the judgment of the Court of Appeals for Clinton County in *Laughlin* v. *Hibbard* (1974), 70 O.O. 2d 194, 328 N.E. 2d 827.[3] The Court of Appeals for Cuyahoga County

---

[2] Although the instant case was certified to this court on conflict grounds, neither of the conflict cases involved specific allegations of fraud upon the court. Our judgment today, therefore, does not disturb, and is not a repudiation of, the courts of appeals' holdings in *Cautela Bros.* and *Laughlin, supra.*

[3] Appellant contends that the conflict between the instant case and *Cautela Bros.* is as follows. In *Cautela Bros.*, a party asserting fraudulent taking of judgment on a cognovit note was afforded relief from judgment pursuant to Civ. R. 60(B)(3); in the instant case, a party alleging that an officer of the court conspired so as to prevent a just adjudication was held to be maintainable only under Civ. R. 60(B)(5).

Appellant's argument is not well-taken. A close examination of *Cautela Bros.* fails to reveal any allegation, whatsoever, or usage by the court, of the term "fraud upon the court," which is specifically provided as a separate and distinct ground for relief from judgment within Civ. R. 60(B)(5). (See, *e.g.,* Staff Notes to Civ. R. 60[B].) At most, the appellant in *Cautela Bros.* alleged that the fraudulent taking of judgment on the note constituted general Civ. R. 60(B)(5) grounds for relief, thus avoiding the one-year limitation set forth in Civ. R. 60(B)(3). Moreover, the court of appeals in effect concluded that such fraudulent conduct amounted to a fraud against a party, and any relief must be pursued under Civ. R. 60(B)(3). This view comports with the generally accepted view concerning the fraudulent confession of judgments on cognovit notes. See, generally, 7 Moore's Federal Practice, Part 1 (2 Ed. 1971) 514, Paragraph 60.33.

Likewise, in *Laughlin,* the assertion that an officer of the court perpetrated a fraud upon the court is totally absent. Rather, the court in *Laughlin* addressed the issue of whether a Civ. R. 60(B)(5) motion made some twenty-seven months after discovery of a fraud was timely.

Since in *Cautela Bros.* and *Laughlin* there is a noticeable absence of the specific Civ. R. 60(B)(5) allegation presented in the instant cause—namely, that a fraud was perpetrated upon the court—the cases are not conflicting and the court of appeals erred in certifying these cases as in conflict to this court. See, also, fn. 2, *supra.*

thus erred in certifying these cases as in conflict, and this court is without jurisdiction to hear the instant cause. I therefore concur in the judgment herein, but only because it lets stand the judgment of the lower court.

Section 3(B)(4) of Article IV of the Constitution of Ohio provides for certification of causes to this court:

"Whenever the judges of a court of appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals of the state, the judges shall certify the record of the case to the supreme court for review and final determination."

In assessing the purpose of an identically worded former constitutional provision,[4] this court stated that "* * * the constitutional convention felt that it would be wholly unwise to create such a judicial structure as would permit one court of appeals to disregard and refuse to follow the judgment pronounced by another court of appeals upon the same question, without some method of composing the conflict thus created," so it inserted this provision to insure that there would be "* * * an authoritative pronouncement upon legal questions * * * [which would result in] uniformity in judicial holdings." *State, ex rel. Sylvania Home Tel. Co.,* v. *Richards* (1916), 94 Ohio St. 287, 292-293.

This court subsequently concluded that in order to effectuate this purpose, "[t]his provision confers exclusive plenary authority on the judges of a Court of Appeals to determine the *existence of such a conflict*" and "such an affirmative finding and certification * * * is not subject to a review by the Supreme Court as to the existence of such a conflict. * * *" *Farm Bureau Mut. Auto. Ins. Co.* v. *Buckeye Union Cas. Co.* (1946), 147 Ohio St. 79 [33 O.O. 259], paragraphs two and four of the syllabus. (Emphasis added.)

After due consideration, I respectfully submit that the certification provision has been misconstrued as barring this court from making its own determination as to whether a conflict actually exists between the cases certified. Such an interpretation is neither mandated by the language of the provision, nor consistent with the avowed purpose of the certification provision. It is my strong belief that Section 3(B)(4), Article IV of the Ohio Constitution, to the contrary, imbues this court with the power to review whether the certified cases are indeed conflicting and to dismiss the cause if no genuine conflict is found to exist.

It is a basic tenet of interpretation that this court will give full force and effect to every word contained in an enactment. Section 3(B)(4), Article IV provides that appellate courts shall certify cases to this court for "review and determination"—it does not provide solely for determination. An interpretation which allows this court to "review" cases to assess whether a genuine conflict does exist gives full force and effect to each and every word in this

---

[4] The former analogous provision was Section 6 of Article IV of the Constitution of Ohio.

constitutional provision. To hold otherwise is to render the term "review" within the provision meaningless.

It is also a well-established principle that this court will attempt to give to each provision such force as will accomplish its ascertainable purpose. The purpose of the certification provision, as stated in *Sylvania Home Tel. Co., supra,* is to promote uniformity of law throughout Ohio. A construction of this provision which requires this court to blindly and unthinkingly accept a lower court's determination of the existence of conflict does nothing to promote the avowed purpose of the provision. For, if there is indeed no genuine conflict between the causes certified, then a decision rendered by this court on the certified issue will not resolve any existing disagreement between lower courts upon the same legal question. In this respect, a decision by this court on an improperly certified case will in no way promote uniformity in judicial holdings as was envisioned by the constitutional convention when it adopted the certification provision. It clearly was not the intention of the framers of this provision, then, to require this court to take jurisdiction over cases which do not present a genuine conflict.

Moreover, a construction of the certification provision which gives courts of appeals plenary power to decide whether a conflict exists unnecessarily impinges upon the inherent power of the court to control its own docket. If this court unquestionably accepts the determination of the lower courts as to certification, the Supreme Court docket will be, to a certain extent, beyond this court's very control. This is, indeed, of great consequence when viewed in the light of this court's ever-increasing case load.

During my tenure on the court, the number of cases certified to this court has steadily increased. This trend is likely to continue and can be attributed to various factors. The fact that society has become more litigious in recent years, coupled with the increased number of lawyers joining the work force every year and the increase in the number of appellate court opinions reported and published has no doubt had its impact. If this court has no inherent power to dispose of improperly certified cases, the potential looms that such causes could constitute the bulk of cases heard by this court every year. If this court must resolve cases even where no conflict actually exists solely because a court of appeals certified the cause, appellate courts could effectively control the issues to be determined by this court. To so allow would result in the "tail wagging the dog," a result certainly not intended by the framers of Ohio's Constitution.

As resolution of the instant case, a case I believe to be improperly certified, so aptly demonstrates, this court's time would be better spent addressing those cases which *do* pose a genuine issue of conflict and those which raise issues of a great and general public interest. This was precisely the intention of the framers of Ohio's Constitution.

While the majority of cases certified to this court do present a genuine issue of conflict, this court must have a means of disposing of those cases

which simply do not pose such a conflict. In practice, this court has developed methods to deal with such a dilemma.

For example, a certified case may be remanded pursuant to Section 6, Rule III of the Rules of Practice for the Supreme Court, to the certifying court of appeals with an order that the issue presented may be clarified by that court. And in *Brown* v. *Borchers Ford, Inc.* (1977), 50 Ohio St. 2d 38 [4 O.O.3d 89], a certified question was remanded unanswered where resolution of another point could be determinative of the action in which the certified question arose. Similarly, in *Pincelli* v. *Ohio Bridge Corp.* (1966), 5 Ohio St. 2d 41, 44 [34 O.O.2d 55], while the cause itself was decided, the certified question was left unanswered because the court held that it was "* * * not required to resolve immaterial conflicts." In my opinion, and for the reasons set forth above, this court also has within its powers the ability to dismiss a case that does present a genuine issue in conflict.

Because my reading of Section 3(B)(4), Article IV discloses no intention which requires this court to forego a review to determine if a genuine conflict does exist, and because I find that there is no genuine issue in conflict between the cases certified, I would dismiss this cause on the grounds that this court is without jurisdiction to render a decision. The majority, in affirming, lets stand the judgment of the lower court and since a dismissal would have the same practical effect, I concur in the judgment only.

LOCHER, J., concurs in the foregoing opinion.