Defendant-appellant/cross-appellee, Teresa Becker, appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, denying her motion for relief from judgment. Plaintiff-appellee/cross-appellant, William Becker, appeals that court's decision following his motion to clarify the parties' separation agreement.
The parties were married in 1974 and two children were born of the marriage. In 1991, they decided to file for a dissolution of their marriage and entered into a separation agreement prepared by Mr. Becker's counsel, Timothy Evans. Mrs. Becker was unrepresented. In an affidavit of Income and Expense form (DR 602) initially prepared by Mrs. Becker, she stated that Mr. Becker's pension with the city of Middletown had a value of $30,000. In the document which was ultimately filed with the court, no amount was listed for the pension.
The parties decided that Mrs. Becker would keep the marital home. According to Evans, notes on early discussions toward the agreement on the home indicated that equity in the house would be divided when the house sold or Mrs. Becker died or remarried. The relevant provisions of the separation agreement, which was made part of the dissolution decree on April 8, 1992, read as follows:
 Section VI(C): * * * The parties agree that Wife shall have and retain as her own all right, title, and interest in the parties' marital residence located at 2909 Rusmar Court, Middletown, Ohio, free and clear of any claim of husband, until Wife dies, remarries, cohabitates with another male, until the youngest child attains the age of 18, or upon sale of said property, whichever occurs first. It is also agreed that Wife shall pay and be responsible for the mortgage due and owing thereon, and if Wife decides to sell the property Husband shall have first option to purchase the same. Upon the sale of the property, the proceeds shall be divided equally between Husband and Wife. Husband shall execute a Quit Claim deed to Wife for said property.
 Section VIII: The parties agree that each shall keep their own bank accounts, life insurance policies and pensions currently in his/her name.
On May 22, 1997, Mr. Becker moved for clarification of the separation agreement. He stated that he had been entitled to one-half of the equity in the home, approximately $27,000 at the time of the dissolution but agreed to defer payment until the parties' youngest child turned eighteen. He argued that he was entitled to any increase in the equity, allegedly as "a form of interest" on his deferred payment. He acknowledged that the agreement did not prohibit Mrs. Becker from refinancing the mortgage, but asked the court to order that upon the occurrence of any of the listed contingencies, she would be required to pay him "one-half of the then existing equity in the home based on the original amortization schedule, notwithstanding any subsequent mortgages or refinances."
Mrs. Becker then filed a motion for relief from judgment pursuant to Civ.R. 60(B)(5). She claimed that the dissolution decree was voidable based upon an incomplete financial disclosure and that Mr. Becker perpetrated a fraud upon the court by failing to accurately disclose the value of his pension.
The trial court held a hearing on these matters. The court heard testimony from the parties and from Timothy Evans, the lawyer who represented Mr. Becker and prepared the separation agreement. Evans stated that the pension had not been appraised or valued because it was not going to be split. Evans identified early notes concerning the marital residence which indicated that the equity in the house would be split upon sale and that a sale was to be required on "death, remarriage, resale, refinancing or when youngest child turns eighteen." He testified that Mrs. Becker did not want the refinancing contingency included although it was a standard part of such agreements, and it was therefore removed. He acknowledged that Mrs. Becker legally could have reduced the equity in the home to near zero, although he did not believe that was the intent of the parties. He stated that the term "proceeds" was basically synonymous with equity.
Mrs. Becker testified that she understood that she owed Mr. Becker $27,000 for his share of the equity in the home at the time of the dissolution but did not have to pay him until one of the listed contingencies occurred. She stated that she received the home in exchange for giving up any share of Mr. Becker's pension which she had been told was worth $30,000.
Mr. Becker testified that he insisted that the pension not be divided or he would proceed with a contested divorce. He stated that he did not know precisely how much his pension was worth at the time of the dissolution, although he knew that his contributions to the pension had been between $25,000 and $30,000 in the late 1980's when the parties had considered relocating. Evidence was presented at the hearing establishing that at the time of the dissolution, Mr. Becker's contributions to his pension fund totalled $41,000 and that its present value as of that time was approximately $120,000.
On Mr. Becker's petition for clarification, the trial court found that the provision of the separation agreement concerning the disposition of the marital residence was poorly drafted and ambiguous. The court found that it was the parties' intent to postpone the collection of Mr. Becker's interest in the marital home until one of the stated contingencies occurs. The court then held that Mr. Becker would be entitled to one half of the then-existing equity as of the time of the dissolution in the amount of $27,277.00.
On Mrs. Becker's Civ.R. 60(B)(5) motion, the trial court found that she had not presented a meritorious claim as she had not used due diligence in investigating Mr. Becker's representations of the value of his pension. The court further stated that there was insufficient evidence to find that Mr. Becker's attorney had committed a fraud upon the court. Additionally, the court found that Mrs. Becker's motion, brought over five years after the dissolution decree had been entered, had not been brought within a reasonable time.
Both parties have appealed. Mrs. Becker presents four assignments of error, three relating to the pension and one relating to the house, which will be addressed with Mr. Becker's assignment on that matter. Her three assignments concerning the pension are as follows:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN FINDING THAT MRS. BECKER DID NOT EXERCISE DUE DILIGENCE IN DETERMINING THE VALUE OF HER HUSBAND'S PENSION.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED IN DETERMINING AS A MATTER OF LAW THAT THE EVIDENCE WAS INSUFFICIENT TO FIND THAT WILLIAM BECKER AND HIS ATTORNEY PERPETRATED A FRAUD ON THE COURT IN FAILING TO ACCURATELY DISCLOSE THE TRUE VALUE OF HIS PENSION FUND.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN OVERRULING MRS. BECKER'S CIVIL RULE 60(B)(5) MOTION FOR RELIEF FROM JUDGMENT.
These assignments of error are related. Our analysis is based upon principles applicable to dissolution of marriage and the standards for granting motions pursuant to Civ.R. 60(B). The Ohio Supreme Court has recently addressed these issues, noting that dissolution of marriage is a creature of statute, based upon mutual consent. In re Whitman (1998), 81 Ohio St.3d 241,243.
 An integral part of the dissolution proceeding is the separation agreement agreed to by both spouses. R.C. 3105.63(A)(1). The separation agreement must provide for a division of all property. The separation agreement is a binding contract between the parties.
 If the court is satisfied that both parties agree to the dissolution and to the terms of the separation agreement, then a judgment or decree of dissolution is granted whereby the marriage is legally terminated. The statute provides for relief from the final judgment in strictly limited circumstances because both parties agreed to and consented to the terms of the separation agreement.
Id.
Civ.R. 60(B) provides in part as follows:
 On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party * * *; or (5) any other reason justifying relief from the judgment[.]
To prevail on a motion for relief brought under Civ.R. 60(B), the moving party must demonstrate by proper evidentiary materials that (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in the five subsections of Civ.R. 60(B); and (3) the motion is made within a reasonable time, and where the grounds for relief are one of the first three subsections, not more than one year after the judgment, order or proceeding was entered or taken. GTE AutomaticElectric v. ARC Industries (1976), 47 Ohio St.2d 146, paragraph two of the syllabus.
All three requirements must be met for the motion to be granted. Rose Chevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17,20. The granting or denial of a motion for relief from judgment under Civ.R. 60(B) is discretionary with the trial court, and absent a clear showing of an abuse of discretion, the trial court's decision should not be disturbed on appeal.Wiley v. Nat'l Garages, Inc. (1984), 22 Ohio App.3d 57, 64.
Mrs. Becker brought her motion under Civ.R. 60(B)(5). This division of the rule permits a court to grant relief from a judgment for "any other reason justifying relief from the judgment." The purpose of the rule is to bring litigation to an end while preserving justice. Lenzer v. Lenzer (Nov. 3, 1993), Lorain App. No. 93CA005541, unreported, at 11. The grounds for invoking this provision should be "substantial." Caruso-Ciresi,Inc. v. Lohman (1983), 5 Ohio St.3d 64, paragraph two of syllabus.
In her first assignment of error, Mrs. Becker argues that the trial court incorrectly found that she did not exercise "due diligence" in determining the value of Mr. Becker's pension. Although we perhaps would not have used this language, we find that the substance of the court's decision was correct.
In the oft-cited case of In re Murphy (1983), 10 Ohio App.2d 134,138, the First District Court of Appeals held that the following facts are to be considered by the trial court in determining whether relief from a decree of dissolution based on an incomplete separation agreement should be granted under Civ.R. 60(B)(5):
 [W]hat caused the delay in making the motion; whether the delay was reasonable; what personal knowledge the movant had about the nature, extent and value of all the marital assets (whether included or omitted); what the movant should have known about them in the exercise of ordinary care; whether the movant expressly or implicitly concurred in the property provisions of the separation agreement; what deceptions, if any, were used by the other spouse; and what has intervened between the decree and the motion.
Considering the above factors, we cannot find that the trial court abused its discretion. Mrs. Becker was aware of the pension, aware that it had value, and perhaps most importantly, aware that Mr. Becker did not and would not agree to divide it in the context of a dissolution. In the exercise of ordinary care, she could have learned more about its true value. Evidence was presented tending to show that she was aware of the amount deducted for the pension from Mr. Becker's paycheck each period. She was presumably aware of how long he had been employed by the city. Mrs. Becker agreed to forego a claim to the pension. Although she was not fully informed as to the true value of the pension, this lack of full disclosure occurred in the context of Mr. Becker's clear refusal to divide the pension. Mrs. Becker has also not shown that her five year delay in bringing her motion was reasonable. Therefore, her first assignment of error is overruled.
In her second assignment of error, Mrs. Becker argues that the trial court erred in ruling that the evidence was insufficient to sustain her fraud on the court theory. The evidence clearly shows that the true value of the pension was not disclosed to Mrs. Becker. However, this was conduct attributable to Mr. Becker who, according to Mrs. Becker, told her that the pension was worth $30,000. Such fraud or mistake would have been cognizable under Civ.R. 60(B)(3). The Ohio Supreme Court in Coulson v. Coulson (1983), 5 Ohio St.3d 12,15, has held that fraud between the parties should be left to a motion under Civ.R. 60(B)(3). Fraud upon the court can be addressed under the catch-all provision of Civ.R. 60(B)(5). Id. The court has, however, "narrowly defined 'fraud upon the court' as the situation '[w]here an officer of the court, e.g. an attorney actively participates in defrauding the court."Scholler v. Scholler (1984), 10 Ohio St.3d 98, 105.
The trial court heard extensive testimony from Mr. Becker's attorney, Timothy Evans. That testimony revealed that Evans had not had the pension appraised because Mr. Becker's consistent goal was to obtain a dissolution (rather than a contested divorce) which would not involve dividing the pension. Evans testified that he would not instruct his client to mislead anyone "but if she knows what the asset is I don't' think he needs to value it or she does." He also testified that he would not always list pensions on a DR 602 form because their value was unknown. Evans also testified that he did not know whether it would have been important to Mrs. Becker if Mr. Becker's actual contributions to the pension at the time of the dissolution were $41,000 rather than $30,000. He testified that he advised Mr. Becker to agree to Mrs. Becker's other requests (within reason) if the end result were a separation agreement which did not involve dividing the pension.
The trial court found that there was insufficient evidence that Evans committed a fraud upon the court. This finding was well within the court's discretion. Documents filed with the court should of course be accurate. However, the court did not rely on or expressly consider the terms of the financial disclosure statement in dissolving the marriage. The record does not indicate that Evans ever represented to the court that he had examined the agreement and determined that it was fair and equitable. Cf. Coulson v. Coulson, 5 Ohio St.3d at 17. Indeed, the trial court was only obligated to determine that the parties agreed to the dissolution and to the terms of the separation agreement. See In re Whitman (1988), 81 Ohio St.3d 241,243. The evidence does not show that Evans mislead the court as to the parties' agreement. The trial court is best able to determine whether a fraud has been perpetrated upon it.Coulson, 5 Ohio St.3d at 16. Consequently, the trial court's determination of that issue is entitled to great weight. Id. Mrs. Becker's second assignment of error is overruled.
In her third assignment of error, Mrs. Becker argues generally that the trial court erred in overruling her motion for relief from judgment. She argues again that Mr. Becker and his attorney committed a fraud on the court and that the separation agreement was voidable due to the failure to include the value of the pension. These issues have been decided above. Mrs. Becker also argues that she brought her Civ.R. 60(B)(5) motion within a reasonable time only in response to Mr. Becker's motion for clarification that she retained counsel who discovered the misrepresentation of the pension's value.
Even if Mrs. Becker were otherwise entitled to relief pursuant to Civ.R. 60(B)(5), we would agree with the trial court that five years was not a reasonable time. All three prongs of the GTE test must be met. Argo Plastic Products Co v.Cleveland (1984), 15 Ohio St.3d 389. Five years is not per se unreasonable. Taylor v. Haven (1993), 91 Ohio App.3d 846. However, appellant has presented no evidence showing that her delay was reasonable. Appellant certainly knew of the existence of the pension at all relevant times. Her recent retention of current counsel is not a factor establishing reasonableness. Therefore, appellant's third assignment of error is overruled.
Mrs. Becker's final assignment of error and Mr. Becker's sole assignment of error on cross-appeal relate to the separation agreement's provision concerning the marital residence. Mr. Becker's motion sought clarification of that provision. The trial court found that the agreement was poorly drafted and ambiguous. The court then found that it was the intent of the parties that Mr. Becker be entitled to one-half of the equity in the home at the time of the dissolution and that he would be entitled to that amount upon the occurrence of the listed contingencies. Mrs. Becker claims that the court's order constitutes an impermissible modification of the parties' agreement. Mr. Becker claims that the trial court properly granted his motion but reached an unreasonable result.
We address these assignments of error together. We find that although both parties have cogent arguments, neither has convinced us that the trial court's solution to this example of poor drafting was an abuse of its discretion.
When a separation agreement by its terms or provisions is deemed ambiguous, a court may then consider the intent of the parties and the equities involved to interpret the agreement.In re Marriage of Seders (1987), 42 Ohio App.3d 155. The parties' separation agreement provided that Mrs. Becker be given all title and interest in the marital residence until
"wife dies, remarries, cohabitates with another male, until the youngest child attains the age of 18, or upon sale of said property, whichever occurs first." Clearly, Mr. Becker retained some interest. However, the agreement is silent as to when and how that interest was to be valued. Mrs. Becker argues that the decree therefore failed to divide the parties' property or reflected a "mutual mistake as to the real estate." Mr. Becker argues that the intent of the parties was to allow him a share of any increase in equity occurring prior to any sale.
In Seders, the ambiguity in the agreement also involved whether the date of the dissolution or the date of an eventual distribution would be utilized to determine the value to be divided. The court found that either of the two interpretations could have been meant by the parties. Under those circumstances, the trial court had broad discretion in clarifying ambiguous language by considering "not only the intent of the parties but the equities involved." Seders,42 Ohio App.3d at 156. We find that the trial court here properly considered both of these factors. The agreement itself and the testimony concerning its drafting show that the parties' intended to divide the equity in the house upon the occurrence of the listed contingencies.
Mrs. Becker received no interest in Mr. Becker's pension whatsoever, although it clearly was a marital asset. Under these circumstances, it was not error to decline to award Mr. Becker interest on his share in the equity in the marital residence. Also, it was not error to interpret the agreement rather than find it "fatally flawed" as Mrs. Becker argues. The agreement was poorly drafted, but it was not so silent on essential matters as to fail to divide the parties' property.Cf. Morgan v. Morgan (June 14, 1994), Columbiana App. No. 93-C-36, unreported.[1]
The marital residence was to be quitclaimed to Mrs. Becker. However, Mr. Becker retained some interest in the equity at the time of the dissolution. Only the timing for the valuation of that equity was in dispute. The trial court therefore interpreted the agreement and that interpretation was within its discretion. An interpretative decision by the trial court cannot be disturbed upon appeal absent a showing of an abuse of discretion. Seders, 42 Ohio App.3d at 156. Mrs. Becker's final assignment of error and Mr. Becker's sole assignment of error on cross-appeal are both overruled.
Judgment affirmed.
WALSH and KERNS, JJ., concur.
Kerns, J., retired of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV, of the Ohio Constitution.
[1] Mrs. Becker cites Morgan in support of her argument that the agreement was fatally flawed. We find that Morgan is distinguishable. In Morgan, the wife was entitled to "occupation and possession" of the family residence, however there was no language at all concerning the remainder of the property rights as a provision for a quitclaim deed from husband to wife had been removed at the husband's insistence. Here, the marital residence was to be quitclaimed to Mrs. Becker.