JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal by appellant Richard J. Oleksy from an order of Domestic Relations Judge Timothy M. Flanagan sustaining the objections of appellee Jill Marie Schraff, (fna Oleksy), to Magistrate Garlandine Jones' decision to modify his 1999 divorce decree child and spousal support obligations. Since the judge failed to state in the order any factual findings to support his determination of spousal support, we remand for a new order containing such findings. In all other respects, we affirm.
{¶ 2} The couple married on August 27, 1983, and have one child born January 14, 1988. In August, 1997, Schraff left the marital residence and filed for divorce. The March 22, 1999, final divorce decree required that Oleksy provide Schraff with spousal support of $2,000 per month for thirty months and child support of $900 per month until the child reached her majority. It also assigned a $20,919.36 arrearage because Oleksy failed to pay any of the ordered, pre-decree temporary spousal and child support. Under the R.C. 3113.215 child support guidelines, Oleksy should have paid $993.28 per month, but the judge reduced his obligation by ten percent, or to $900, to offset his contributions for the child's grade school tuition and extracurricular activity fees.
{¶ 3} In March of 1999, Schraff had been a full-time homemaker with only a high school education. The judge had imputed an income of $10,712 to her for purposes of computing Oleksy's spousal and child support obligations, and ruled orally that she was to obtain education to make herself gainfully employable, and also to find immediate employment.
{¶ 4} On February 16, 2000, Oleksy moved to modify spousal support, on the ground that Schraff had found full-time employment providing her with an earnings potential of $19,240 annually. At a later hearing, he alleged that she had been operating a side business using arts and crafts supplies to create household decorations for sale at private parties.
{¶ 5} Although, prior to the divorce decree, Oleksy was eligible to receive Social Security retirement benefits, he continued to work instead, and deferred benefits until he formally retired. Some time in 1999,[1] Schraff received a Federal Social Security Administration (SSA) check for $843, representing her daughter's share of Oleksy's retirement benefit for an unknown time period. In January, 2000, she started receiving monthly SSA checks for $698 for her daughter, which increased in 2001 to $722 per month.
{¶ 6} Oleksy's motion to modify child support claimed that all SSA benefits received by Schraff for his child's benefit should be directly set off against his child support obligation. He also moved under Civ.R. 60(B) to vacate the final divorce decree, claiming that, because Schraff had received the SSA benefits before the final entry of divorce, her failure to disclose the receipt of the benefits to the judge represented a fraud upon the court and prevented him from correctly determining Oleksy's individual child support obligation. Schraff countered that, under Civ.R. 60(B)(3), the motion was untimely filed because it alleged fraud against Oleksy, not the court, and must have been filed within one year of the divorce decree, and it was not.
{¶ 7} The magistrate heard the motions for modification of child and spousal support, and the Civ.R. 60(B) relief, simultaneously. Following the parties' testimony and the arguments of each party's lawyer, she found that, based on the new respective actual incomes of the parties, that a thirteen percent deviation from the child support guidelines in Oleksy's favor was appropriate, and that any SSA benefits Schraff received should be directly set off against any of Oleksy's arrearage or present and future child support obligations. She left undisturbed the $900 per month child support obligation.
{¶ 8} Using Oleksy's immediate prior-year income of $104,048, she found that his spousal support obligation of $2,000 per month provided Schraff with a $24,000 yearly income, or twenty-five percent (25%) of his income. She calculated his support obligation to be $26,012, and subtracted from that Schraff's actual income of $19,240, reducing his obligation to $6,824 per year. Accordingly, she granted all of Oleksy's motions.
{¶ 9} Schraff filed objections to the magistrate's decision, the judge found them to be well taken, and, * * * pursuant to R.C. 3105.18, * * * denied Oleksy's motion to modify spousal support and motion for relief under Civ.R. 60(B). He also reassigned Oleksy's child support obligation, based on * * * the statutory factors set forth in Ohio Revised Code (R.C.) 3109.05 and 3113.215 and the basic child support schedule * * * as $1,152.87 per month, eliminated the ten percent deviation from the child support guidelines contained in the divorce decree, as of February 16, 2000,[2] and granted Oleksy a complete set-off for SSA payments made to Schraff from that date forward.
{¶ 10} Oleksy asserts one assignment of error:
 {¶ 11} The Judgment of The Trial Court Sustaining The Objections of The Plaintiff-appellee Was Against The Manifest Weight of The Evidence.
{¶ 12} A judge has a great deal of latitude in awarding spousal support and his decisions are reversible only where there is an abuse of discretion.[3] An abuse of discretion implies that the judge's attitude is unreasonable, arbitrary or unconscionable.[4]
{¶ 13} Although the judge is granted freedom in making spousal support orders, he is constrained in the evaluation of the surrounding facts and circumstances by R.C. 3105.18, which mandates certain relevant factors to be considered when making such awards.[5] R.C. 3105.18(C)(1) sets out the factors that must be considered when contemplating an order of spousal support:
 {¶ 14} In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 15} (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
 {¶ 16} (b) The relative earning abilities of the parties;
 {¶ 17} (c) The ages and the physical, mental, and emotional conditions of the parties;
{¶ 18} (d) The retirement benefits of the parties;
{¶ 19} (e) The duration of the marriage;
 {¶ 20} (f) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 21} (g) The standard of living of the parties established during the marriage;
 {¶ 22} (h) The relative extent of education of the parties;
 {¶ 23} (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 24} (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 25} (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 26} (l) The tax consequences, for each party, of an award of spousal support;
 {¶ 27} (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 28} (n) Any other factor that the court expressly finds to be relevant and equitable.
{¶ 29} A judge is required to "indicate the basis for [the spousal support] award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law."[6] In the judgment entry reversing the magistrate's decision and continuing Oleksy's $2,000 monthly spousal support obligation, the judge articulated no basis for that decision whatsoever, apart from identifying R.C. 3105.18 as the applicable statutory provision by which such a determination is to be made. Accordingly, we cannot evaluate whether it was an abuse of discretion in maintaining the award, considering that Schraff is now positively, financially contributing to her own support.
{¶ 30} We, therefore, remand this issue to the judge for a finding of sufficient detail to enable this court to undertake its review of the decision to leave the spousal support award undisturbed.
{¶ 31} In Marker v. Grimm,[7] the Ohio Supreme Court set forth the general mandatory standards a judge must employ when determining an appropriate child support obligation:
 {¶ 32} R.C. 3113.215(B)(1) requires that a calculation of the amount of an obligor's child support obligation must be made `in accordance with' the basic child support schedule set forth in R.C. 3113.215(D), the applicable worksheet in R.C. 3113.215(E) or (F), and other requirements of the law. R.C. 3113.215(E) and (F) both provide a sample or `model' worksheet and each provision directs the court to `use a worksheet that is identical in content and form' to the applicable model provided. R.C. 3113.215(B)(1) further provides that the amount calculated using the schedule and worksheet (through line 18 of the worksheet) is `rebuttably presumed' to be the correct amount of child support due and that amount must be ordered to be paid unless both of the following apply:
 {¶ 33} "(a) The court, after considering the factors and criteria set forth in division (B)(3) of this section, determines that the amount calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet, through line 18, would be unjust or inappropriate and would not be in the best interest of the child.
 {¶ 34} "(b) The court enters in the journal the amount of child support calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet, through line 18, its determination that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination."
{¶ 35} Thus, the acceptable procedure for ordering an amount of child support which deviates from the amount `rebuttably presumed' to be the correct amount due is for the court to fully comply with the requirements of R.C. 3113.215(B)(1)(a) and (b).[8]
{¶ 36} Here the judge, upon reviewing the child support worksheet attached to the magistrate's decision, noted that Oleksy's obligation, using then-current financial data for the parties, was computed to be $1,152.82 per month. At no time during or following the hearing did Oleksy contend that his actual obligation should be adjusted; rather, he simply petitioned the court for an order crediting him for any amounts of his child's SSA benefits attributable to his retirement. The judge did order that all the SSA benefits identified by Oleksy be set off against both his past and current child support obligations. This resulted in a roughly fifty percent (50%) reduction of Oleksy's out-of pocket monthly child support obligation. Having been awarded the relief he requested, Oleksy is in no position to complain of the judge's resolution of his child support issues.
{¶ 37} Further, in the absence of specific findings as to special circumstances requiring a deviation from the support schedule contained in R.C. 3113.215, which Oleksy did not request and the judge did not make, the judge was required to adhere to the support guidelines and impose an obligation consistent with the statutorily mandated figure produced by the child support worksheet. The judge committed no error.
{¶ 38} At hearing, Oleksy contended that Schraff had a decorative crafts business, a hidden source of income which, for the purposes of computing child support, could have affected the level of her income. Beyond bare allegations that because she made a number of rather large and frequent purchases of craft supplies, Schraff must have earned a profit, Oleksy had no evidence of even one sale of any such item by Schraff, nor did he attempt by any method to quantify what Schraff's purported or potential income could have been from her alleged cottage industry. His allegations have no bearing on the judge's decision.
{¶ 39} Finally, Oleksy challenges the denial of his Civ.R. 60(B)(5) relief. That rule provides: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; * * * or (5) any other reason justifying relief from judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. * * *"[9] In GTE Automatic Electric v. ARC Industries,[10]
paragraph two of the syllabus, the Ohio Supreme Court held: "To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken."
{¶ 40} While there is no precise definition of "fraud upon the court," the Supreme Court of Ohio in Coulson v. Coulson,[11] cited the following description with approval:
 {¶ 41} "* * * `Fraud upon the court' should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by the officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.Fraud, inter parties, without more, should not be a fraud upon the court, but redress should be left to a motion under [Fed.R.Civ.P.] 60(b)(3) or to the independent action.'" (Citations omitted.)[12]
{¶ 42} The Court further stated: "It is generally agreed that `* * * [a]ny fraud connected with the presentation of a case to a court is a fraud upon the court, in a broad sense.'[13] Thus, in the usual case, a party must resort to a motion under Civ.R. 60(B)(3). Where an officer of the court, e.g., an attorney, however, actively participates in defrauding the court, then the court may entertain a Civ.R. 60(B)(5) motion for relief from judgment." (Citation omitted.)[14]
{¶ 43} Oleksy submits that Schraff's failure to inform him that she began receiving SSA benefit checks for his child constituted fraud on the court, because the judge was limited in his ability to properly compute the child support obligation. As we held above, however, the existence of a SSA entitlement does not bear on the ultimate amount of money that a child-support obligee will receive, it merely alters the source of the child support payment. Such a controversy does not impede the court in its execution of law or the administration of justice. Oleksy's motion, originally filed September 1, 2000, and amended October 6, 2000, was not properly before the judge as a motion for relief under Civ.R. 60(B)(5), because he did not allege that Schraff's attorney, as an officer of the court, participated in any misrepresentation. This portion of assignment of error is not well taken.
Judgment affirmed in part and remanded.
It is ordered that the parties shall bear their own costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., AND JAMES J. SWEENEY, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc. App.R.22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E), unless a motion for reconsideration with supporting brief, per App.R. 26(A) is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] While Oleksy argued that the SSA benefits had been received before the date of the divorce decree, Schraff testified that she received the check in late March, 1999, after the final decree issued.
[2] While the record is silent as to Jennifer's current choice of school, Schraff argued that, since she was graduating from St. Bartholomew Elementary School in 2001, the primary justification for the ten percent deviation from the child support guidelines, Oleksy's payment of Jennifer's private school tuition, no longer existed.
[3] Vanderpool v. Vanderpool (1997), 118 Ohio App.3d 876, 878-79,694 N.E.2d 164.
[4] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144.
[5] See Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 518 N.E.2d 1197, paragraph one of the syllabus.
[6] Kaechele, 35 Ohio St.3d at 93.
[7] (1992), 65 Ohio St.3d 139, 141, 601 N.E.2d 496.
[8] Id. We also note that, effective March 22, 2001, R.C. 3113.215 has been repealed and replaced by R.C. 3119.01 et seq. There is no dispute, however, that R.C. 3113.215 applies for purposes of this appeal.
[9] See Civ.R. 60(B); See also Griffey v. Rajan (1987), 33 Ohio St.3d 75,77, 514 N.E.2d 1122.
[10] (1976), 47 Ohio St.2d 146, 351 N.E.2d 113.
[11] (1983), 5 Ohio St.3d 12, 448 N.E.2d 809.
[12] Id. at 15, 448 N.E.2d at 811.
[13] 11 Wright Miller, Federal Practice and Procedure (1973) 253, Section 2870.
[14] Id. at 15, 448 N.E.2d at 812. See also Zimmie v. Zimmie (Dec.22, 1988), Cuyahoga App. No. 54860.