[Cite as *Kuhn v. Kuhn*, 2014-Ohio-126.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| JAMES P. KUHN | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | |
| KELLY L. KUHN NKA COTTLE | : | Case No. 13 CA 24 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                  Pleas, Case No. 12-DR-140



JUDGMENT:                         Affirmed/Reversed in Part



DATE OF JUDGMENT:                 January 13, 2014



APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

DONALD D. BROWN                           ROBERT ROE FOX
803 Steubenville Avenue                   388 South Main Street
Cambridge, OH  43725                      Suite 402
                                          Akron, OH  44311

*Farmer, J.*

{¶1}   On April 19, 2001, appellee, James Kuhn, purchased a property for $30,000.00.   He put $6,000.00 down and financed the remaining amount with First Federal Savings Bank of Eastern Ohio.  The property was deeded in his name only.

{¶2}   On March 13, 2002, the mortgage was rolled into a mortgage with Caldwell Savings and Loan Co. in the amount of $136,600.00 in order to construct a home on the property.

{¶3}   On June 3, 2006, appellee executed a home equity line of credit with Wright-Patt Credit Union in the amount of $25,000.00.

{¶4}   On February 5, 2007, appellant, Kelly (Fatheree) Kuhn nka Cottle, paid the balance due on the home equity line of credit in the amount of $18,644.38.   On February 17, 2007, appellant paid $80,000.00 toward the Caldwell mortgage.

{¶5}   On March 30, 2007, appellee, together with appellant, refinanced the property with Summit Federal Credit Union in the amount of $47,500.00, the amount remaining on the Caldwell mortgage.

{¶6}   On May 12, 2007, appellee and appellant were married.  The subject property and home became the marital residence.  During the course of the marriage, the mortgage was satisfied and the marital residence property was unencumbered by any debt.

{¶7}   On October 22, 2011, the parties executed an oil and gas lease with Gulfport Energy Corporation for oil and gas rights to the marital residence property. Both parties were identified as the "lessors."  The lease provided for a signing bonus of

$121,285.00, and twenty percent royalties in the event oil and gas are produced from the property. The signing bonus check was executed on February 16, 2012.

{¶8} On March 19, 2012, appellee filed a complaint for divorce. The parties entered into various agreements and temporary orders. By order filed June 12, 2012, the parties agreed that appellee would pay appellant $70,000.00.

{¶9} A final hearing before a magistrate was held on March 1, 2013. The parties entered into an agreement on all issues except for the disposition of the oil and gas lease signing bonus check and the rights to any future royalties. By decision filed March 26, 2013, the magistrate determined the marital residence property was appellee's separate property and therefore the signing bonus and the rights to any future royalties under the oil and gas lease were the sole property of appellee. The magistrate noted appellant received $70,000.00 and appellee agreed to pay appellant an additional $10,000.00. The trial court adopted the magistrate's decision on same date. Appellant filed objections. By entry filed June 7, 2013, the trial court denied the objections.

{¶10} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶11} "THE TRIAL COURT'S DECISION TO GRANT PLAINTIFF-APPELLEE THE FULL PROCEEDS FROM THE SIGNING BONUS CHECK AND LEASE ROYALTIES WAS NOT SUPPORTED BY CREDIBLE OR SUFFICIENT EVIDENCE AS DEFENDANT-APPELLANT INVESTED SUBSTANTIAL PREMARITAL FUNDS WHICH PROVIDED HER A SEPARATE PROPERTY INTEREST IN SAME."

II

{¶12} "THE TRIAL COURT'S DECISION TO GRANT PLAINTIFF-APPELLEE THE FULL PROCEEDS FROM THE SIGNING BONUS CHECK AND LEASE ROYALTIES WAS NOT SUPPORTED BY CREDIBLE OR SUFFICIENT EVIDENCE AS THESE ASSETS REPRESENT MARITAL PROPERTY ACQUIRED DURING THE MARRIAGE."

I, II

{¶13} Appellant claims the trial court's decision to grant appellee the full proceeds from the signing bonus check and the rights to any future royalties under the oil and gas lease was against the manifest weight and sufficiency of the evidence. Appellant claims she had invested premarital funds in the subject property thereby providing her a separate property interest, and the signing bonus check and the rights to any future royalties constitute marital property acquired during the marriage. We agree in part.

{¶14} R.C. 3105.171(A)(3)(a) defines "marital property" as follows in pertinent part:

(i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the

retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;

{¶15} R.C. 3105.171(A)(6)(a)(ii) defines "separate property" and includes the following: "Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage."

{¶16} As noted by the magistrate in her decision filed March 26, 2013 at Findings of Fact Nos. 10 and 11, it is uncontested that appellee purchased the marital residence property prior to the marriage and constructed a home on the property:

10. The real property located at 64720 Haught Road, Cambridge, Ohio, which consists of approximately 24.257 acres, more or less, and which will hereinafter be referred to as the Haught Road property, was acquired by Husband by general warranty deed dated April 19, 2001, for $30,000. All mineral rights including oil and gas went with the land.

11. Husband paid $6000 down and secured the other $24,000 with a mortgage. In 3/13/2002, Husband using an equity line of credit for $136,000 and with the help of his family and some

subcontractor's, Husband built a home on the real estate. What was left on the original mortgage was rolled over into the line of credit. The only value given for the Haught Road property was $165,000, from a drive by appraisal for an equity line of credit.

{¶17} Appellant argues she obtained a separate interest in the property when she invested her premarital funds in the property ($18,644.38 toward a home equity line of credit and $80,000.00 toward the mortgage). In addition, the property was refinanced during the course of the marriage and appellant's name was included on the note and mortgage. See, Note, Disclosure, Security Agreement attached to Appellant's Brief as Appendix I.

{¶18} Appellee argues the parties agreed to an $80,000.00 payment to appellant. During the hearing before the magistrate (T. at 5), appellant's attorney explained the following:

> ***Mr. Kuhn had agreed in the Temporary Orders that he would reimburse to Mrs. Kuhn Eighty Thousand Dollars that we agree she paid on the mortgage before they were married. Seventy Thousand ($70,000.00) on it has been paid so he still owes her Ten Thousand Dollars ($10,000.00). That Ten Thousand Dollars ($10,000.00) will be paid as far as a cash award is concerned or a cash payment is concerned.

{¶19} The magistrate's temporary order filed June 12, 2012 stated the following:

3. That the oil and gas delayed rental/royalty deposit previously ordered held in a joint account by the parties, shall be closed and the funds held in said account shall be divided $70,000 to the Defendant and the balance in the amount of $51,419.48 to the Plaintiff. The parties are ordered to forthwith meet at Advantage Bank to close and liquidate said account, consistent with this agreement and order (see attached check copies evidencing closure and distribution of account proceeds.

{¶20} The parties' March 1, 2013 agreement, attached to the magistrate's March 26, 2013 decision as Exhibit A, included the following.

A. Real Estate

1. Haught Road Residence and Premises: The real estate and residence premises located at 64720 Haught Road, Adams Township, Cambridge, Guernsey County, Ohio, presently titled in the name of the Plaintiff, consisting of the Plaintiff's residence and improvements and 24.257 acres more or less, shall be the sole property of the Plaintiff, free and clear of all claims of the Defendant. Any and all mortgage indebtedness on said premises, in excess of the $142,525 due on the Orchard property financing,

secured by the Haught Road current line of credit, shall be assumed and paid by the Plaintiff and the Plaintiff shall save the Defendant harmless therefrom. The line of credit indebtedness associated with the indebtedness due on the Orchard property/farm shall be paid in accord with subsequent provisions of this agreement. Further the Plaintiff shall pay unto the Defendant, on or before April 22, 2013, the remaining sum of $10,000.

{¶21} The parties resolved all of their issues regarding the marital residence property save for the issue of the $121,285.00 signing bonus for the oil and gas lease acquired during the course of the marriage, as well any future royalties.

{¶22} During the hearing, appellant presented evidence of her premarital investments in the property, despite the parties' agreement to reimburse appellant for her contributions.

{¶23} We specifically find the agreed settlement amount for appellant's contributions to the financing of the marital residence property fully resolved the issue of appellant's investments. Therefore, we find "transmutation" of the property did not occur, and appellant did not obtain a separate property interest.

{¶24} The gravamen of this case is whether the oil and gas lease signed by both parties is separate or marital property.

{¶25} The lease provided for a signing bonus of $121,285.00 and the right to future royalties in the event oil and/or gas is extracted from the property. The lease specifically identifies the lessors as "James P. Kuhn and Kelly L. Kuhn, his wife." The

consideration for the drilling rights was the out-front payment of $121,285.00 to the lessors. This was "income" received during the marriage and was reportable to the IRS for tax purposes. T. at 52. The 1099 from Gulfport Energy Corporation identified both parties as the recipients of the signing bonus. *Id.*

{¶26} Based on the nature of the payment, we find the $121,285.00 to be marital property just as any other income generated during a marriage. We find it is divisible as a separate award, half to each party. Because no transmutation occurred, we find any future royalty rights belongs exclusively to the property owner, appellee herein.

{¶27} Upon review, we find the trial court erred in granting the full proceeds of the signing bonus to appellee, but was correct in awarding appellee the rights to any future royalties. The $121,285.00 is to be divided equally between the parties, and appellee is entitled to any future royalties under the oil and gas lease.

{¶28} Assignment of Error I is denied. Assignment of Error II is granted as to the signing bonus and denied as to any future royalties under the oil and gas lease.

{¶29}  The judgment of the Court of Common Pleas of Guernsey County, Ohio is hereby affirmed in part and reversed in part.

By Farmer, J.

Wise, J. concurs separately and

Gwin, P.J. dissents.

SGF/sg 1210

*Gwin, P.J., dissenting*

{¶30} I respectfully dissent from the majority's characterization of the $121,285.00 signing bonus as marital property to be divided equally between the parties.

{¶31} The trial court recognized that the marital residence property was appellee's separate property. The trial court further recognized that the royalties from the oil and gas lease are exclusively appellee's separate property because appellant never acquired any interest in the marital residence property.

{¶32} "Marital property" includes all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage. R.C. 3105.171(A)(3)(iii). Thus, when either spouse makes a labor, money or an in-kind contribution that causes an increase in the value of separate property, that increase in value is marital property. Passive income and appreciation acquired from separate property by one spouse during the marriage, however, is separate property. R.C. 3105.171(B)(4). Therefore, because the agreed settlement amount for appellant's contributions to the financing of the marital residence fully resolved the issue of appellant's investments, allocation of the signing bonus can only be characterized as passive income acquired from the separate property of the appellee. Appellant never acquired a "separate property interest." Appellant's signing of the lease agreement could not create a property interest in the marital residence property. She therefore had no interest to convey through the oil and gas lease.

{¶33} The only interest appellant potentially had to convey was a dower interest. R.C. 2103.02. However, a "'[d]ower interest arises when property is purchased during a

marriage and continues unless the interest is specifically released. * * * Such a release must be done in writing and recorded.' *State ex rel. Miller v. Private* Dancer (1992), 83 Ohio App.3d 27, 30, 613 N.E.2d 1066, 1068." *Ogan v. Ogan*, 122 Ohio App.3d 580, 585, 702 N.E.2d 472(12th Dist 1977); *Accord Jewett v. Feldheiser*, 68 Ohio St. 523, 67 N.E. 1072. The oil and gas lease could not, and, as found by the trial court did not create any interest in appellant in the separate marital residence property of appellee. Thus, appellant could never have a dower interest in appellee's separate property that was not purchased during the marriage.

{¶34} Accordingly, I dissent from that portion of the majority opinion that characterizes the $121,285.00 signing bonus as marital property to be divided equally between the parties. I would overrule both of appellant's assignments of error and affirm the Court of Common Pleas of Guernsey County decision.

*Wise, J., concurring*

{¶35} I concur with Judge Farmer's decision to affirm in part and reverse in part. I add my observation, regarding the issue of future royalties on the oil and gas lease, that even though appellee was awarded the subject real estate as his separate property, he agreed in writing in the lease to effectively make appellant a co-lessor. I find this provides at least some evidence of transmutation of the future revenue stream into marital property. However, a trial court's decision on the classification of separate and marital property is generally not reversed unless there is a showing of an abuse of discretion. *See, e.g., Valentine v. Valentine,* (Jan. 10, 1996), Ashland App.No. 95COA01120*,* citing *Peck v. Peck* (1994) 96 Ohio App.3d 731, 734, 645 N.E.2d 1300. I am therefore not inclined under the circumstances presented to disturb the trial court's ruling as to said future lease royalties.