# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

RANDA MILOSAVLJEVIC,

Plaintiff-Appellant/Cross-Appellee

v.

RONNIE MILOSAVLJEVIC,

Defendant-Appellee /Cross-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 18 MO 0019

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2016-150

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed in part; Reversed in part.

---

*Atty. Michael J. Shaheen,* Shaheen Law Group, 128 S. Marietta Street, P.O. Box 579, St. Clairsville, Ohio 43950, for Plaintiff-Appellant/Cross-Appellee and

*Atty. Gregory W. Hinzey*, Hinzey Law Offices, 276 East Main Street, St. Clairsville, Ohio 43950 for Defendant-Appellee /Cross-Appellant.

Dated: September 23, 2019

---

**Robb, J.**

{¶1} Both Randa Milosavljevic ("the wife") and Ronnie Milosavljevic ("the husband") appeal the post-divorce decree decision of the Monroe County Common Pleas Court. The wife's motion informed the trial court about newly discovered royalties that were accumulating and being held in suspense under an oil and gas lease on marital property. The court granted the wife's motion in part by evenly dividing the royalties held by the lessee that were generated on production through the date of the divorce decree. Contrary to the husband's construction of the divorce decree, the trial court found the realty, including the minerals, to be marital not separate property. We disagree with the husband's contention that the wife failed to show entitlement to relief from judgment under one of the grounds in Civ.R. 60(B) and find she could not have raised the royalty issue by appealing from the divorce decree. We sustain the wife's argument that she is entitled to royalties both before and after the date of the divorce decree and find the trial court erred in failing to allocate her half of the future royalties on the existing oil and gas lease.

{¶2} The wife also raises an issue with the remedy imposed by the court on the husband's motion to hold the wife in contempt. While acknowledging she violated the divorce decree by failing to relinquish the truck, she contends the court's decision ordering her to reimburse the husband for monthly vehicular loan payments should be reduced from five payments to three, claiming the decree was ambiguous as to when she should return the truck. The trial court's exercise of discretion with regards to the truck is upheld. Accordingly, the trial court's judgment is affirmed in part and reversed in part. In reversing, we hereby grant the wife the right to one-half of all royalties payable under the existing lease.

## Statement of the Case

{¶3} Before the marriage, the husband owned a residence on a 167-acre farm in Clarington, Ohio, which was purchased in 1995 for $133,000. He paid his first spouse for her equity in the property under their February 2004 divorce, when the property was valued at $230,000; he took out a mortgage for approximately $142,000 around that time. The current parties were married in December 2004. In January 2012, after seven years

Case No. 18 MO 0019

of marriage, the husband transferred the property to himself and the wife herein by executing a survivorship deed.

**{¶4}** On September 17, 2012, the parties executed an oil and gas lease under which the lessee paid a signing bonus of approximately $962,000. The lease had a five-year primary term (with an option to extend the primary term for another five years upon the payment of $5,750 per acre). The parties paid off the mortgage on the property with the proceeds of the 2012 signing bonus.

**{¶5}** The wife filed a complaint for divorce in May 2016. Shortly thereafter, the court ordered the husband to cash a $17,000 check he received for a pipeline and pay half of the amount to the wife. The wife served interrogatories and a request for production of documents on the husband, and the court ordered both parties to cooperate in discovery. The parties stipulated two other properties were the husband's separate property, but the wife argued the 167 acres was marital property.

**{¶6}** The divorce trial was held in 2017 on July 30, August 1, and September 22. On the last date, the husband was asked if he had been approached about re-signing the lease that expired that month; if anyone had called him expressing they wanted to renew; and if he received anything in the mail regarding the lease. He answered in the negative. He said he was receiving royalties for one of the properties stipulated to be his separate property. (Ex. 20).

**{¶7}** In proposals filed after the hearing, the husband argued the 167-acre farm was his separate property and the oil and gas lease with its future royalties and all other sums due and payable thereunder was also his separate property. He alternatively asked the court to value the farm at $331,583 in accordance with the testimony of his witness. The wife argued the 167 acres was marital property entitling her to half of the equity. She said the $420,000 value assigned by her expert was fair, while noting another expert appraised the property at $563,400. Separately, she asked the court to evenly divide all proceeds which may evolve from the parties' oil and gas lease (and to award her half of the mineral interest after the lease lapsed).

**{¶8}** On December 4, 2017, the wife filed a motion asking the court to order all money received in conjunction with ownership of the 167 acres, including oil and gas proceeds, be deposited with the clerk (or in a joint account to be divided equally). On

December 14, 2017, the court ordered that any distribution under the lease received by either party shall be deposited with the clerk of courts for allocation by the court pending the issuance of the final divorce decree.

**{¶9}** On January 10, 2018, the court issued the divorce decree. No spousal support was awarded with the court finding the wife was younger, healthier, worked full-time, and received $18,000 in temporary spousal support since the divorce action was filed. The two properties in the stipulations were found to be separate property as was the husband's cattle business. As to the 167 acres, the court made detailed findings of fact and conclusions of law and said it applied a flexible totality of the circumstances test to determine if transmutation of the husband's separate property occurred when he executed the survivorship deed. The court concluded by clear and convincing evidence that the husband had donative intent to gift the property to the wife and himself jointly and the 167 acres was thus marital property. The court valued the 167 acres at $420,000 and awarded the wife half of the equity.

**{¶10}** The court granted the wife the items of personalty listed in her exhibit, excluding the truck which the court awarded to the husband after the parties agreed to this in their testimony. The husband was to remain liable for the debt on the truck. The wife was to retrieve the personalty she was awarded within 60 days of the date of the decree, and the husband was to pay the wife $281,185 for her equity share in the joint accounts, real estate, and personal property within 90 days of the date of the decree. Neither party appealed from the January 10, 2018 divorce decree.

**{¶11}** On February 7, 2018, the wife filed a motion for relief from judgment under Civ.R. 60(B), stating: the husband testified he had no information as to an undertaking on the oil and gas lease when in fact he knew the lease was held by production; he refused to adhere to the December 14, 2017 judgment entry on depositing money under the lease with the clerk; accumulated royalty payments were being held by the lessee; and the husband attempted to receive the accumulated royalties after the divorce decree was issued, but the lessee would not release the funds until the court issued a further order.

**{¶12}** On April 11, 2018, the husband filed a motion for contempt and for enforcement of the divorce decree as a result of the wife's: refusal to relinquish the truck;

failure to retrieve the personalty she was ordered to retrieve within 60 days; and refusal to execute the deed for the 167 acres after he timely delivered the check on April 6, 2018. The husband sought reimbursement of the monthly loan payments on the truck starting with the January 20, 2018 payment until the wife's relinquishment of the truck. He also asked the court to clarify the order as to the 167 acres and sought an additional statement specifying that he was awarded all interest in the oil and gas lease. As to the wife's Civ.R. 60(B) motion, he complained she should have discovered the evidence about accumulating royalties earlier and presented the evidence at trial.

{¶13} On June 22, 2018, the court held a hearing on the parties' motions. The wife testified she was not aware the lessee was holding accumulated royalties until after the divorce decree was issued. (Tr. 74). She said the husband made it appear the lease was null and void (due to a lack of production in the primary term). (Tr. 86).

{¶14} The husband was asked about the evidence that his calls to the lessee prompted them to hold the royalties in suspense pending his divorce. (Tr. 56, 68). He rationalized that he told the lessee to hold the division order not the money, but he admitted the division order was a prerequisite for the issuance of royalty checks. (Tr. 115, 124). His instruction to the lessee occurred a week before he testified at the final divorce hearing in September 2017. After he learned from his attorney that he had a good chance of being awarded the 167 acres (as separate property), he figured he should stop the issuance of a division order until the property's legal status was no longer "in limbo." (Tr. 104-107, 114).

{¶15} The husband suggested he did not mention the anticipated production because the wife's attorney did not ask a precise question on the topic; he noted a lease held by production would not be re-signed or renewed. (Tr. 46-47, 114). He argued a lessee's decision to ask for a signed division order does not necessarily mean production occurred by that date, claimed he did not know production was occurring at the final divorce hearing, and said his neighbors did not receive checks until November 2017 (after the final hearing). (Tr. 107, 117-118). As to the court's December 14, 2017 order on depositing royalties, he was aware of the wife's motion but claimed he did not know about the court's order. (Tr. 116). The wife's motion prompted him to call the lessee to ask if

she was receiving royalties, at which time he again instructed the lessee to wait for the court's decision.  (Tr. 35-36).

{¶16}  At the end of the post-judgment hearing, the court orally ordered the wife to relinquish the truck that day and to retrieve her personalty within seven days and memorialized this in a June 25, 2018 order.  The court took the other matters under advisement and provided time for post-hearing memoranda.  The wife's memorandum argued the husband failed to supplement discovery responses and misled the court.  She asked the court to divide all royalties payable under the present oil and gas lease (in the past and in the future).  The husband's memorandum argued the evidence on royalties was untimely as the wife should have presented this evidence at trial.  He pointed out that at the September 22, 2017 divorce trial, the wife introduced declarations of pooling which were recorded September 1, 2017.

{¶17}  On July 18, 2018, the court issued an order observing:  although the evidence at the divorce trial included the declarations of pooling, there was no evidence by either party on production; the December 14, 2017 entry (ordering the deposit of royalties) was issued in order to secure the parties' assets; and the evidence at the post-judgment hearing showed the lessee was holding in suspense over $1.2 million in royalties.  The court ordered the parties to submit statements on the amount attributable to the 167 acres through the date of the January 10, 2018 divorce decree.  (7/18/18 J.E. & 7/30/18 J.E. with date correction).  The parties then filed statements regarding the royalties held by the lessee as of that date.

{¶18}  On September 13, 2018, the court issued its order on the post-decree motions.  As to the royalty issue, the court found:  the husband testified he had no knowledge about renewal or the ongoing undertaking as to the lease; he failed to disclose interactions with the lessee or the lessee's intent to begin production; and the husband had discussions with the lessee about holding or suspending the payment of royalties until the divorce was resolved.  The court reiterated that the December 14, 2017 order showed its intent to protect all assets including oil and gas royalties.  The court concluded that equity required all royalties associated with production occurring through the date of the divorce be divided equally as marital property, finding it was undisputed that the

Case No. 18 MO 0019

royalties attributable to production on the 167 acres through January 10, 2018 totaled $543,008.08.[1]

**{¶19}** As to the issue with the truck, the court found the wife violated the divorce decree by keeping the truck until June 22, 2018 and ordered the wife to reimburse the husband for the sum of $2,657.40 (representing the monthly loan payments on the truck for February, March, April, May, and June). The wife filed a timely appeal from the September 13, 2018 judgment entry, and she presents two assignments of error on appeal. The husband filed a timely cross-appeal, and he presents three assignments of error on appeal. We shall address the husband's cross-appeal first.

<u>Court did not find minerals were separate property</u>

**{¶20}** The husband's first assignment of error provides: "The trial court committed reversible error in its Post Decree Judgment awarding Plaintiff one-half of the sum of $543,008.08 in royalties held in suspense by [the lessee] from production of oil and gas from the 167.28 acre farm for the period starting with the commencement of production through January 10, 2018, as the Divorce Decree entered January 10, 2018 awarded Defendant the 167.28 acre farm including any and all Mineral Interests associated therewith."

**{¶21}** Initially, the husband suggests the wife did not set forth a meritorious claim because she would not be entitled to royalties on the minerals if the minerals were his separate property. The husband argues the January 10, 2018 divorce decree finding the 167 acres to be marital property essentially determined that the mineral estate underlying that acreage was his separate property. He claims the court found he made a gift of one-half of the surface estate to the wife (and thus divided that evenly as marital property) but determined that he did not have the requisite donative intent to gift her one-half of the oil and gas under the property.

**{¶22}** However, as the wife responds, the January 10, 2018 divorce decree did not conclude the mineral estate was the husband's separate property. The husband executed a deed transferring the property from himself to the wife and himself, joint and

---

[1] The court found the checks that would have been issued by that date totaled $170,973.35, but the production amount was higher as the lessee's accounting principles caused entries to be delayed by approximately two months.

survivor. The deed was for the entire fee, and the mineral estate was not severed at any point. The parties thereafter signed a lease for oil and gas and used some proceeds to pay off a mortgage which encumbered the property since before the parties were married. The court generated pages of factual findings relating to the property and assigned a value to the marital property by weighing the competing testimony of three experts and the parties. The court did not say the value excluded the mineral estate, and the precise testimony on the matter is unknown as the divorce transcript was never generated.

{¶23} In multiple pages of the decree, the trial court recited the law regarding the transmutation of separate property to marital, made conclusions of law on the topic, and found "by clear and convincing evidence that the [husband] possessed an unequivocal intent to give the wife a present possessory interest in the 167-acre farm when he executed the Joint and Survivorship Deed in 2012." The Court awarded the husband "the real property, including any and all Mineral Interests associated therewith, free and clear of any claims of [the wife] subject to [the husband] owing the [wife] the sum of $191,292.96 for her one-half equity share of the real estate." Notably, the award of the real property, which included the minerals, was subject to the husband paying the wife for her share of the equity in the property.

{¶24} Nowhere did the trial court suggest it was speaking of only the surface estate when it applied the law on a spouse's inter vivos gifting of premarital property, considered the husband's donative intent, and defined the 167 acres as marital property. Clearly, the same property conveyed in the survivorship deed (which included minerals) was the property the court found to be marital property. As the husband recognizes, the ownership and transfer of real estate includes the mineral interests unless excepted or reserved. *See* R.C. 5301.02 (every grant of lands shall convey the entire interest which the grantor could lawfully grant, unless it clearly appears by the deed that the grantor intended to convey or mortgage a less estate.) *See also* 3A Summers, *Oil and Gas*, Section 35:1 (3d Ed.2018 update) (ownership of land includes ownership of all minerals beneath the land unless the interest in the minerals is severed, and a conveyance or gift of land includes ownership of the minerals unless excepted or reserved).

{¶25} In any event, the court explicitly declared that the minerals were included in the 167 acres of marital property being allocated to the husband upon his payment to the

wife for her half. Contrary to the husband's contention, the January 10, 2018 divorce decree did not label the mineral estate his separate property but clearly labeled as marital property the entire 167 acres including the unsevered minerals. He did not appeal that decision. He recognizes that because he did not appeal the divorce decree, he cannot challenge the decision characterizing the property as marital, and he does not alternatively argue that the court erred in finding the property and the minerals marital. Instead, he attempts to read words into the decree so as to limit the marital property to only the surface. We reject this construction of the divorce decree. To the extent Appellant's first assignment of error claims the trial court's finding of marital property encompassed only the surface of the 167 acres, it is without merit.

<u>Civ.R. 60(B)</u>

**{¶26}** Within his first assignment of error, the husband also argues: the court knew of the September 17, 2012 oil and gas lease; the divorce decree awarded him the 167 acres by allowing him to pay the wife her half of the equity; the court specifically included the mineral rights in the award; the lease was thus awarded to him as a mineral lease follows a transfer of the land and minerals; the wife failed to appeal the divorce decree; and a Civ.R. 60(B) motion cannot be used as a substitute for appeal. He also reviews Civ.R. 60(B) in his second assignment of error alleging: "The trial court committed reversible error in sustaining Plaintiff's Motion for Relief from Judgment in part by awarding Plaintiff one-half of all royalties from production of oil and gas from the 167.28 acre farm through January 10, 2018 as the evidence at the hearing held on June 22, 2018 did not prove by a preponderance of the evidence any ground for relief under Civ.R. 60(B) 1, 2, 3, or 5."

**{¶27}** A Civ.R. 60(B) movant must demonstrate: (1) entitlement to relief under one of the five grounds listed in the rule; (2) there exists a meritorious defense or claim to present if relief is granted; and (3) the motion was filed within a reasonable time (with a maximum time limit of one year for the first three grounds). *GTE Automatic Electric, Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 150, 351 N.E.2d 113 (1976). The wife timely filed her motion for relief from judgment within a month of the divorce decree. She filed her motion under Civ.R. 60(B)(1),(2),(3), and (5), thereby alleging entitlement to relief on the grounds of:

(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; * * * or (5) any other reason justifying relief from the judgment.

Civ.R. 60(B)(1)-(3),(5). The fifth ground is a catch-all provision reflecting the inherent power of a court to relieve a person from the unjust operation of a judgment, but (B)(5) is not a substitute for a more specific ground and the reason must be substantial. *Caruso–Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64, 66, 448 N.E.2d 1365 (1983). *See also Coulson v. Coulson*, 5 Ohio St.3d 12, 15, 448 N.E.2d 809 (1983) (includes active participation in a fraud upon the court by an officer of the court such as an attorney).

**{¶28}** The husband points out Civ.R. 60(B) is not to be used as a substitute for an appeal, and thus, the movant cannot argue a trial court erred on an issue that could have been raised on appeal. *See, e.g., Key v. Mitchell*, 81 Ohio St.3d 89, 90-91, 689 N.E.2d 548 (1998). As the wife points out, she could not have raised the issue of the royalties being held by the lessee on appeal because the fact of production and accumulated royalties was not part of the trial record. Without production, the five-year primary term of the lease would have expired by the time of the final day of the divorce trial. Until it was discovered the lease was held by timely production, there was no indication of grounds for an appeal on the matter of lease.

**{¶29}** The husband states the wife did not show by a preponderance of the evidence that she was entitled to relief on any of the four grounds she raised. As to the second ground, the husband states the wife could have discovered the production and anticipated royalties before the divorce decree if she had diligently investigated and subpoenaed the lessee. The wife responds that she was relying on his discovery responses and truthful testimony rather than take that route.

**{¶30}** Regarding the first ground for relief, the husband suggests any neglect in investigating or questioning him at trial was not excusable. He states the wife and her attorney should have known production was forthcoming because they introduced pooling declarations (recorded on September 1, 2017) at the final day of the divorce trial which

was September 22, 2017. Regarding the third ground, he claims he did not engage in fraud, misconduct, or misrepresentation because the questions asked of him at the divorce trial were imprecise and he testified at the post-decree hearing that he did not know (before testifying at the September 22, 2017 trial) that production had been obtained and royalties were being generated.

{¶31} We note only one page of testimony from the divorce trial was presented which was relevant to this issue (the page was provided to the trial court as an exhibit at the post-decree hearing; the remainder of the divorce transcript is not part of the record). On this page, the husband answered in the negative when asked: "Have you been approached about re-signing the Oil and Gas Lease that expires September of 2017?" and "Nobody has called you and said hey, we want to renew, you've not received anything in the mail or nothing?" (Ex. 20). In reality, a week before this testimony, the husband instructed the lessee to hold the division order, which was required before royalty checks would be issued.

{¶32} In ruling on the motion for relief, the trial court found the husband "repeatedly testified that he had no knowledge of information as to a renewal or the ongoing undertaking of the subject Lease" and he "specifically failed to disclose that he had any interaction with [the lessee] regarding their intention to begin production on said property." The wife testified at the post-decree hearing that the husband led her to believe the lease expired at the end of the primary term. As the determiner of credibility, the trial court could adjudge the husband's claims at the post-decree hearing to lack credibility and could weigh the evidence in a manner unfavorable to the husband finding his testimony was false or misleading by misrepresenting the status of the lease.

{¶33} In addition to fraud and misrepresentation, the second ground also includes misconduct. Before the divorce hearing, the husband told the lessee to refrain from generating a division order, which was required to be signed by the lessors before royalties checks could issue. He admittedly did this due to the pending divorce. He was previously ordered not to transfer or encumber marital assets; he was also previously ordered to cash a $17,000 pipeline check he received and split the proceeds with the wife. The fact-finder can glean the husband's intent from his instructions to the lessee as encompassing a motive to keep assets from being discovered, hoping he would be

Case No. 18 MO 0019

awarded the property as separate property so that the court would never discover the lease was in production.

{¶34} Then, after the divorce hearing and prior to entering a decree, the trial court ordered the parties to deposit with the clerk any royalties received from the lessee. The court specifically stated that such royalties would be allocated by the court. Knowing he had already asked the lessee to hold the division order three months earlier, Appellant then contacted the lessee to ensure the wife was not receiving royalties. He again instructed the lessee to hold the division order, which was required before royalty checks started. The husband admits his neighbors received checks in November 2017, before the wife's motion and the court's ruling thereon.

{¶35} If the husband had not instructed the lessee to hold the division order and instead sought instructions on signing the order and/or forwarding it to the other name on the account (the wife), then royalties would have been paid and deposited with the clerk for the court's allocation. At such point, the court would have been aware of the assets and could have allocated royalties generated on production from real estate the court considered marital. By asking the lessee to hold the division order, the husband also helped ensure he did not receive a lease document in the mail, which affected his testimony on receiving information in the mail and any responsibility to supplement discovery responses involving lease paperwork. The totality of the circumstances are pertinent in determining misconduct and concealment of assets in an action meant to divide assets.

{¶36} Additionally, these were assets that were able to be characterized as marital that were not disclosed or divided. The fact that this is a divorce action with the inherent purpose of dividing assets makes the omitted evidence a stronger reason for seeking relief from judgment so that a judgment could be entered regarding the omitted asset (as opposed to a civil action where evidence was not collected on a damages issue until after trial). A party to a divorce may seek relief under Civ.R. 60(B) due to omitted assets. *See Sharick v. Sharick*, 7th Dist. Mahoning Nos. 00 C.A. 123, 00 C.A. 234 (Sept. 24, 2001) (omission of annuities from divorce trial and decree). The accumulation of royalties from a lease on marital property was akin to an omitted account, and the production of oil and gas under lease meant a marital asset believed to no longer exist still existed.

Case No. 18 MO 0019

**{¶37}** In fact, the lessee would not pay the husband the royalties even after he was awarded the land because the court's order did not discuss the accumulated royalties held in suspense. This shows the concerns of finality did not outweigh the concerns of justice. See *Colley v. Bazell*, 64 Ohio St.2d 243, 248, 416 N.E.2d 605, 609 (1980) (Civ.R. 60(B)(1) is a remedial rule to be liberally construed; Civ.R. 60(B) attempts to strike a balance between the conflicting principles of justice and finality). It also shows the husband needed a court order as well, and his motion to enforce the judgment asked the court to clarify the decree by stating that the award of the land (in exchange for his payment to the wife) included all interests in the oil and gas lease and to all royalties payable after July 31, 2017 (the second day trial was held).

**{¶38}** Considering the large amount of royalties generated and the husband's calls to the lessee which resulted in royalties being held and undiscovered, the grounds were substantial and the situation could be characterized as unusual and extraordinary. *See Caruso–Ciresi*, 5 Ohio St.3d at 66 (the Civ.R. 60(B)(5) catch-all provision reflects the inherent power of a court to relieve a person from the unjust operation of a judgment and the grounds for relief asserted thereunder must be substantial); *Sell v. Brockway*, 7th Dist. Columbiana No. 11 CO 30, 2012-Ohio-4552, ¶ 25 (division (B)(5) is to be used only in extraordinary and unusual cases when the interests of justice warrant it; although this court was not persuaded the case involved excusable neglect, we found the case fell into the catch-all division warranting relief). We note division (B)(5) was not invoked by the wife merely to avoid the one-year time limit in division (B)(1) through (3) as the motion was filed within a month of the divorce decree. However, more specific grounds are applicable, such as (B)(3) as outlined above and (B)(1) as discussed next.

**{¶39}** The trial court could reasonably find the totality of circumstances satisfied Civ.R. 60(B)(1) due to mistake, inadvertence, surprise, or excusable neglect. When differentiating between excusable and inexcusable neglect, a court asks whether the movant or her attorney proceeded with "complete disregard for the judicial system and the rights of the [nonmovant]." *GTE*, 47 Ohio St.2d at 153. All of the surrounding facts and circumstances must be considered. *Colley*, 64 Ohio St.2d at 249 (which can include the monetary amounts involved). At trial, the wife was under the impression, due to the husband's statements and actions, that there was no production and the lease expired

Case No. 18 MO 0019

before the last day of trial. In case production occurred before the September 17, 2017 lease expiration with royalties pending the lessee's issuance of checks, the wife sought and received an order to protect these royalties pending the court's property distribution. This did not work to disclose the payable royalties due to the husband's unilateral instructions to the lessee. This was not disregard for the judicial system by the wife; nor did she disregard the husband's rights.

**{¶40}** Justification was shown for any unilateral mistake in failing to subpoena the lessee and in relying on the husband's answers. *See generally Smith v. Smith*, 8th Dist. Cuyahoga No. 83275, 2004-Ohio-5589, ¶ 17. The husband testified at the divorce trial that he had not heard anything from the lessee when he in fact spoke to the lessee a week prior and provided instructions to hold the division order for the production. The husband testified at the post-decree hearing that production had not occurred by the time of the final divorce hearing; if true, then it was reasonable for the wife to believe the five-year primary term (and thus the lease) had expired. One of the division orders specifically applicable to the property owned by both parties (printed September 1, 2017) provides an effective date of July 1, 2017, and another (printed in February 2018) provides an effective date of September 1, 2017. These facts suggest that if the husband testified truthfully, then the mistake on non-production was mutual.

**{¶41}** Furthermore, both parties submitted proposals more than a month after the final divorce trial with neither disclosing the accumulation of royalties and with the husband arguing "future royalties" were his separate property (because the land was his separate property). His proposal was not amended once the husband was put on notice by judgment entry that the court wished to allocate accumulated royalties. Lastly, the timing here supports the assertions of mistake, inadvertence, and excusable neglect as grounds for entitlement to relief, especially considering that production began as the lease was about to expire which was around the time of the final divorce hearing. The trial court in its broad discretion can consider the absence at trial of information on accumulating royalties and production on an expiring lease to be a qualifying mistake and/or find any neglect by the wife or her counsel to be excusable under the particular circumstances of this case.

**{¶42}** The determination of whether relief should be granted under Civ.R. 60(B) is left to the trial court's sound discretion. *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20, 520 N.E.2d 564 (1988); *Griffey v. Rajan*, 33 Ohio St.3d 75, 77, 514 N.E.2d 1122 (1987). The appellate court cannot reverse unless the trial court's decision is unreasonable, unconscionable, or arbitrary. *State v. Herring*, 94 Ohio St.3d 246, 255, 762 N.E.2d 940 (2002). Considering the totality of the circumstances, the trial court reasonably found the wife sufficiently showed she was entitled to relief under one of the grounds in Civ.R. 60(B). Contrary to the husband's argument, she was not barred from raising the unallocated asset by her failure to appeal the divorce decree as the information relied upon was not in the trial record. Finally, her claim was meritorious, which allowed the court to allocate the now-identified and previously unallocated royalties on a lease thought to be expired but actually held by production. We agree with the court's decision to evenly divide the royalties through the post-decree order, but find the court's discretion should have been exercised to allocate future royalties as well as pre-decree royalties.

Royalties beyond the date of the divorce decree

**{¶43}** The wife first assignment of error claims: "the trial court erred by failing to address and allocate any future proceeds associated with the oil and gas lease to which Husband and Wife are parties thereto as this asset represents marital property acquired during the course of the marriage." The wife urges the oil and gas lease was a marital asset as it was a lease on marital property signed by both parties as the lessors with both parties entitled to royalties if production occurred before the end of the primary term.

**{¶44}** The husband points to this court's *Ball* case where the probate court held an oil and gas lease was an asset of the lessor's estate even though the lessor named his granddaughter as the transfer-on-death beneficiary of the property which was subject to the lease. *In re Ball*, 2016-Ohio-4917, 67 N.E.3d 28, ¶ 42 (7th Dist.), ¶ 4, 12-13, 16-17. This court reversed, finding the oil and gas lease transferred with the property. *Id.* at ¶ 42-44. This was a transfer-on-death case subject to statutes on transfer-on-death interests, and we described the issue as determining the interest the decedent owned when he died. *See id.* at ¶ 34-42 (applying the same rationale to the oil and gas lease transfer as governing the transfer of the mineral estate with the surface), citing *Chesapeake Expl., L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185

(for a discussion on the lease transferring with the property). We concluded the lease "was an encumbrance on the title that remained with the realty if title is transferred during its terms." *Id.* at ¶ 42.

**{¶45}** However, this does not mean a trial court allocating marital assets during a divorce cannot allocate royalties payable under the marital lease to both spouses while awarding the marital property subject to the lease to one of the parties. The wife did not merely sign the lease due to a dower interest but due to the fact that she was named on the deed as a joint and several owner with her husband. *Compare Kuhn v. Kuhn*, 5th Dist. No. 13 CA 24, 2014-Ohio-126 (where the deed was only in the husband's name, and he argued the wife's signature on the lease could thus only be for dower release purposes).

**{¶46}** In *Kuhn*, the Fifth District found the wife was not entitled to future royalties *because the property was characterized as the husband's separate property* (affirming the trial court on this ground). *Id.* at ¶ 26 (the parties had agreed on an amount the husband would tender as repayment for the wife's premarital contribution on a prior mortgage).[2] As the wife points out, *Kuhn* is distinguishable as the property here was not the husband's separate property. Rather, the property subject to the lease was found to be marital, and the husband did not appeal this decision.

**{¶47}** Marital property shall be divided equally unless the court determines this would be inequitable. R.C. 3105.171(C). The definition of marital property includes: all real and personal property currently owned by either party and all interest that either has in any real or personal property and that was acquired by either or both of the spouses during the marriage. R.C. 3105.171(A)(3)(a)(i)-(ii) (subject to (b), which states marital property does not include separate property). It is not disputed the lease was entered during the marriage. It was entered by both parties over land owned jointly and severally by the husband and the wife, land found by the trial court to be marital property.

**{¶48}** Under the totality of the circumstances, we find the court's decision to award the wife half of the royalties but limit the award to those generated on production occurring

---

[2] The Fifth District's decision also found that even though the property was the husband's separate property, a signing bonus paid during the marriage should be divided as marital income (reversing the trial court's decision on passive appreciation). *Kuhn* at ¶ 26. The husband's appeal to the Supreme Court was dismissed as improvidently allowed in *Kuhn v. Kuhn*, 143 Ohio St.3d 457, 2015-Ohio-2806, 39 N.E.3d 507.

through the date of the divorce to be unreasonable, unconscionable, and arbitrary. In granting relief, equity called for providing half of future royalties under this lease to the wife. As she points out, the property (originally valued at $420,000) produced undisclosed royalties of over half a million dollars in the first few months of production before the divorce decree was entered. (Another $700,000 plus in royalties accumulated in the few months between the decree and the post-judgment hearing). Future income from the marital asset was not predictable where the fact of production and thus the continued validity of the lease was undisclosed at the time of trial. The wife was entitled to rely on the evidence as to the amount of royalties being generated as evidence that the marital property had a vast future income value which could only be accounted for by equitably dividing it. Under the particular circumstances of this cases, equity can only be achieved by providing her half of the royalties until the lease terminates.

{¶49} Lastly, we dispose of the husband's third assignment of error where he contests the trial court's extension of the end date of the marriage beyond the statutory presumption that the marriage ended on the last day of trial. *See* R.C. 3105.171(A)(2)(a)-(b) ("During the marriage" means the period of time from the date of the marriage through the date of the final hearing in a divorce action, unless the court determines this date range would be inequitable in which case the court may select dates that it considers equitable), (G) (in issuing the property division order, the court shall make written findings of fact demonstrating the marital property has been equitably divided, and the court "shall specify the dates" used in determining the meaning of "during the marriage"). The husband urges the wife should only be entitled to whatever royalties had been generated from production occurring through September 22, 2017, the day of the final hearing, instead of through the date specified by the trial court, January 10, 2018 (the day of the divorce decree).

{¶50} In specifying a date different than the statutory presumption, the trial court explained that "equity requires" that the amount of royalties held in suspense through the date of the decree be equally divided as marital property. The court essentially viewed the royalties accumulated and held by the lessee as a type of marital account to be valued on a date certain without considering the lease itself as an asset. However, we found supra that the income generated by the marital asset shall be evenly divided beyond the

Case No. 18 MO 0019

date of divorce and throughout the term of the lease (which was signed during the marriage over marital property). As such, the husband's argument (on the end of date of the marriage for valuing the asset of royalties accumulated during the marriage) is moot.

{¶51} In any event, to the extent the royalties accumulated "during the marriage" would be considered marital income or a marital account distinct from the future royalties, the date of the divorce decree would be a more equitable date for valuation than the last day of trial under the totality of the circumstances in this case. This includes: the property generating the royalties was marital property; the lease was entered by both parties during the marriage; the primary term of the lease ended before the hearing; the division orders had effective dates prior to the hearing date; the court intent to protect royalties paid pending the final divorce decree was made clear in its December 14, 2017 order; this was after the final day of the divorce hearing and a month before the divorce decree; in this order, the parties were commanded to deposit royalties with the clerk of courts pending the court's final decision so the court could allocate the royalties to the parties; the court's intent was thwarted by the husband's unilateral instructions on a joint lease; no royalties were deposited due to the husband's instructions to the lessee; he gave these instructions before the final hearing and again after the wife's motion on royalties; and the husband did not ask for an end date of September 22, 2017 but sought an earlier end date below.

{¶52} When choosing a date for identifying and valuing assets to be divided, the trial court has broad discretion in choosing the end date for purposes of property valuation; "[i]t is the equitableness of the result reached that must stand the test of fairness on review." *Berish v. Berish*, 69 Ohio St.2d 318, 319-320, 432 N.E.2d 183 (1982). In addition, "the circumstances of some cases may require the court to use different dates for different valuation purposes, so that the court need not utilize the same valuation date for each item of marital property" especially when a valuation was not provided at the statutorily-presumed date. *Keyser v. Keyser*, 12th Dist. No. CA2000-06-127 (Apr. 9, 2001) ("it is within the trial court's discretion to use different valuation dates where the valuation or account balances at a certain date were the only evidence before the court"), citing *Hutchins v. Hutchins*, 12th Dist. No. CA99-11-021 (Sept. 18, 2000) ("Given the

evidence, it was unnecessary for the court to explain why it utilized equitable dates for the division instead of the presumed dates").

Truck payments

**{¶53}** The wife's second assignment of error alleges: "the trial court erred in determining [the wife] should be responsible for the motor vehicle payment." In a temporary order entered after the divorce action was filed, the wife was granted the exclusive use of a truck, and the husband was ordered to pay the vehicular loan payments and insurance. (6/20/16 J.E.). The January 10, 2018 divorce decree indicated: the wife asked for all personal property in her exhibit except for the truck; the wife did not wish to retain the truck; the husband wanted the truck; the husband was awarded exclusive possession and ownership of the truck; he would be solely responsible for the loan thereon; and the value of the truck was accounted for in the equal division of personal property. (1/10/18 J.E. ¶ 62, 70, 72, F, I, J).

**{¶54}** As for the personal property awarded to the wife, the decree stated the wife "shall make arrangements to obtain the items of personal property which she was awarded herein within sixty (60) days of the date of this Decree" and ordered the parties to "arrange for a mutually agreed upon time and date for [the wife] to take possession of said items." (1/10/18 J.E. ¶ FF). The husband was ordered to pay the wife "for her equity share in the joint bank accounts, real estate and personal property" within 90 days of the decree.

**{¶55}** On February 14, 2018, the wife filed a motion for a stay of the divorce decree, asking for various temporary orders to remain in effect pending the court's ruling on the Civ.R. 60(B) motion. She opined that she should be permitted to continue using the truck she was ordered to return in the divorce, claiming she could not buy another vehicle until she received payment for her share of the marital property under the divorce decree. The court originally set the hearing on the wife's stay motion for April 4, 2018, the same day the hearing was scheduled for her Civ.R. 60(B) motion.

**{¶56}** The wife filed a motion to reconsider this date for the stay hearing, claiming it would be moot by then and saying she would not relinquish the truck as demanded by the husband until the court issued an order. The court then denied her stay request without a hearing, noting the April 4 hearing would proceed on only the Civ.R. 60(B)

motion.  (3/15/18 J.E.)  Thereafter, the wife's counsel received a short continuance and then a longer continuance on the assertion that more time was needed to gather evidence (and that the hearing should be combined with the husband's contempt motion).

**{¶57}** On April 11, 2018, the husband filed a motion for contempt and for enforcement of the divorce decree as a result of the wife's refusal to relinquish the truck. (The motion was also based on the wife's refusal to retrieve the items within 60 days as ordered in the decree and her refusal to sign the deed for the 167 acres after receiving the check in a timely manner).  The husband asked for reimbursement for the monthly loan payments he paid on the truck ($531.48 per month) starting with the January 20, 2018 payment until the truck was relinquished to him.

**{¶58}** At the June 22, 2018 motion hearing, the wife expressed a belief that the January 10, 2018 divorce decree gave her either 60 or 90 days to relinquish the truck. (Tr. 90).  She kept the truck longer because she believed she should wait until after the court ruled on her Civ.R. 60(B) motion on royalties, even though the court denied her motion for stay.  (Tr. 91-92).  At the end of the hearing, the court orally ordered the wife to relinquish the truck that day (and retrieve her personalty within seven days), stating the reimbursement issue would be taken under advisement.  This was memorialized in a June 25, 2018 order, which allowed for post-hearing memoranda.   In the husband's post-hearing submission, he sought reimbursement for the vehicle loan payments starting with the January 20, 2018 payment through the June 20, 2018 payment, asking for six payments at $531.48 for a total of $3,188.88.

**{¶59}** In the September 13, 2018 judgment entry, the trial court found the wife violated the divorce decree and it was unreasonable and irrational for her to retain the truck until June 22, 2018, noting she only relinquished it that day because the court orally ordered her to do so.  The court ordered the wife to reimburse the husband for the monthly loan payments on the truck for the months of February, March, April, May, and June (five payments at $531.48 each) for a total of $2,657.40.

**{¶60}** On appeal, the wife contests the extent of this order, essentially contending the amount should be reduced to three months of loan payments.  She notes the decree did not specifically state a deadline for relinquishing the truck and claims it was ambiguous on this point.  She points to the decree's other timelines (quoted above), such as the

provision of 90 days for the husband to tender her equity in the joint bank accounts, real estate, and personal property and the provision of 60 days for her to retrieve the personal property awarded to her. She then concludes:

> Given that the other items of personal property did not have to be exchanged for sixty (60) days and the ambiguity of the provision relevant to the Chevrolet Truck, it is only conceivable that the motor vehicle had to be given to Appellee within the same time frame. Based upon the same, Appellant had until March 10, 2018 to make the Chevy Truck available to Appellee. Thus the Order requiring Appellant to reimburse Appellee for the monthly car payment for the months of February and March is unjust.

(Apt. Br. 11).

**{¶61}** Initially, we note that this argument does not support the conclusion that the trial court's inclusion of March in its calculation was unjust. Under her rationale, the husband was still wrongfully deprived of the vehicle for much of March. Even the wife's quoted argument would allow for using at least part of March in the calculation, and she does not make or support an argument that a per diem calculation was required where monthly payments were due on the asset being withheld in violation of a court order.

**{¶62}** As to both February and March, the trial court's inclusion of the payments made by the husband for those months would not be considered unjust. In interpreting the requirements of the decree where there is good faith confusion over the meaning, the trial court is to consider the equities involved in determining the prior intent of the decree, and the decision is not disturbed absent an abuse of discretion. *McCuen v. McCuen*, 7th Dist. Columbiana No. 98 CO 65 (Apr. 5, 2000).

**{¶63}** Notably, the decree *did not allow the husband* to wait 60 days to provide the wife with her personal property, but ordered *the wife to retrieve* her property within 60 days from the date of the decree. And, the clause did not relate to the truck. But even if the wife assumed the truck exchange was comparable to the clause on her retrieving her personal property, it would be comparable in the husband's favor. That is, if the instructions as to the truck had been the same as the instructions for the wife's personal property, then the husband would have had up to 60 days to pick up the truck; it would not have provided the wife 60 days until she had to return it.

Case No. 18 MO 0019

**{¶64}** The wife suggests it was reasonable for her to fail to realize that the decree required her to return the vehicle immediately or within a reasonable time after the divorce decree. Yet, this was a financed asset subject to monthly loan payments and insurance that the husband was ordered to pay under a temporary order and which she agreed should be returned to the husband in the divorce. The temporary orders were eliminated upon the entry of the divorce decree. Under the decree, he was awarded exclusive possession and ownership of the truck and was ordered solely responsible for the loan and other liabilities thereon. However, he was then denied the benefit of driving the truck; instead, the wife continued to use the truck.

**{¶65}** Additionally, the wife's affidavits suggested she was refusing to return the truck until the court ruled on her Civ.R. 60(B) motion, not because she did not believe the deadline had expired. Notably, the wife continued to hold the truck even after the trial court denied her motion for a stay on March 15, 2018, which motion specifically explained her desire to retain the truck until her other motion was ruled upon.

**{¶66}** Moreover, she was driving the vehicle at the expense of another. After a divorce decree, a trial court has discretion to order a party to reimburse the other for post-decree occurrences that deprive a party of a benefit or funds provided in the divorce. *Bryant v. Bryant*, 4th Dist. Gallia No. 04CA9, 2005-Ohio-1297, ¶ 13 (where the court ordered the wife to reimburse the husband for spousal support she continued to receive after the divorce decree awarded her no support). The court could also consider the husband was maintaining insurance on the vehicle during the months it was wrongfully withheld from him as the vehicle was burdened by a loan (and he was previously responsible for paying the insurance on the truck pursuant to a temporary order).

**{¶67}** And, as conceded by the wife in her filings after the contempt hearing, she was in contempt by failing to return the truck. She also failed to retrieve her personal property within 60 days as clearly ordered in the decree. She does not contest that she violated the divorce decree (after March 10). Besides violating the decree, she ignored the order denying her motion for a stay (where she had specifically urged that she should be permitted to continue driving the truck temporarily). After the court's denial of the stay and the filing of the contempt motion against her, her retention of the truck became egregious. This continued retention and the statements in her stay requests contributed

to diminishing her credibility and to her loss of any benefit of the doubt the court may have otherwise given her on her reasonable interpretation of the decree. A trial court has discretion in choosing the ramifications for violating a court order. *Bryant* at ¶ 16-18 (the court also ordered wife to pay lost wages of husband for her failure to appear at property closing). The court found the length of time she kept the truck to be unreasonable and irrational, and we agree.

**{¶68}** Regardless, as stated above, the wife received a benefit by driving a truck for free for more than five months after the order to relinquish the truck in the January 10, 2018 divorce decree (which order she could anticipate as she agreed to relinquish the truck during trial). During those months, the husband lost the benefit provided to him in the divorce decree of having exclusive possession and ownership while he continued to the pay the monthly obligations on the truck even though he did not receive the truck until after the June 22, 2018 contempt hearing. Although another trial judge may have utilized one less month in the calculation, we do not substitute our judgment for the trial court where the court did not abuse its discretion. The court's decision ordering the wife to reimburse the husband for five months of car payments was not unreasonable, arbitrary, or unconscionable. This assignment of error is overruled.

**{¶69}** In conclusion, the trial court's judgment is affirmed in part and reversed in part. In reversing, we hereby grant the wife the right to one-half of all royalties payable under the existing lease.


Donofrio, J., concurs.

Waite, P.J., concurs.


Case No. 18 MO 0019

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed in part and reversed in part.  In reversing, we hereby grant the Appellant/Cross Appellee the right to one-half of all royalties payable under the existing lease. Costs to be taxed evenly between the parties.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**