[Cite as *Mancz v. McHenry*, 2022-Ohio-3256.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| BARRY W. MANCZ, FIDUCIARY OF THE ESTATE OF AUBREY KIRBY | : | |
| | : | |
| | : | Appellate Case No. 2022-CA-20 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2015-CV-183 |
| v. | : | |
| | : | (Civil Appeal from |
| CALLISTA MCHENRY, et al. | : | Common Pleas Court) |
| | : | |
| Defendants-Appellants | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of September, 2022.

. . . . . . . . . . .

BARRY W. MANCZ, Atty. Reg. No. 0011857, 40 North Main Street, Suite 2160, Dayton, Ohio 45423
    Attorney for Plaintiff-Appellee

ROBERT L. MCHENRY, 1153 Cottage Court, Fairborn, Ohio 45324
    Defendant-Appellant, Pro Se

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Robert L. McHenry appeals from the trial court's denial of his Civ.R. 60(B) motion for relief from judgment. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} Robert McHenry is the husband of Callista McHenry, one of several children of Audrey Kirby. In October 2000, when Kirby was approximately 86 years old, she executed a power of attorney appointing Callista as her attorney-in-fact. Kirby died in April 2007, leaving 13 surviving children.

{¶ 3} In December 2009, Attorney Barry Mancz, as successor fiduciary of Kirby's estate, filed an action in probate court claiming that Callista had breached her fiduciary duties by concealing Kirby's assets from the estate. Following a hearing, the probate court found Callista guilty of concealing, embezzling, or conveying away assets of the decedent, in violation of R.C. 2109.50, in the amount of $290,975.46. The court also assessed a ten-percent penalty, bringing Callista's total liability to the estate to $320,073.01. We affirmed the trial court's judgment on appeal. *Mancz v. McHenry*, 2012-Ohio-3285, 974 N.E.2d 784 (2d Dist.).

{¶ 4} In March 2015, Mancz filed this action against both Callista and Robert, alleging that Callista had neither satisfied the probate court judgment nor returned any of the estate property. According to the complaint, Callista had fraudulently transferred her ownership interest in real estate to her husband prior to the probate court lawsuit and while other litigation by her siblings was pending against her. Callista allegedly also

transferred, converted, or concealed bank accounts and other financial assets that were recoverable in furtherance of the probate court judgment. Mancz claimed that the transfers from Callista to Robert were void and that he was entitled to an order compelling the return of any and all such proceeds or the value thereof. The complaint specifically requested a judgment ordering the return of property of Kirby's estate that had been conveyed by Callista to herself, to Robert, or to others. The complaint also sought punitive damages.

{¶ 5} In January 2019, the matter proceeded to jury trial before a magistrate. Of relevance here, one issue concerned funds that ultimately were placed in a PNC account ending in 0500. As summarized by the trial court, "a Bank One CD was purchased with Audrey Kirby's funds that matured on January 9, 2007. When the Bank One CD matured, Callista used $54,188.96 of the proceeds to purchase a 9 month CD in her sole name at Liberty Savings Bank (Liberty account 3705) on May 3, 2007 (See Exhibit 10). Callista closed Liberty account 3705 on November 4, 2008 and deposited monies from that account into National City Bank account 4833 jointly held with Robert. At some point, National City Bank account 4833 became PNC Bank account 0500. (Trial Transcript p. 90, 92, 95, 144)." Decision, Jan. 22, 2022. Mancz presented evidence at trial that the PNC account was solely held by Robert. The McHenrys testified that they jointly owned the account.

{¶ 6} The jury returned verdicts in the amount of $127,133 against both Callista and Robert for the fraudulent transfer of Kirby's financial assets. It also found that Callista had fraudulently conveyed her interest in real estate to Robert. On January 15,

2019, the magistrate entered a decision on the jury verdicts. The magistrate declared the deed transferring Callista's interest in real estate to Robert to be void and entered judgment against both Callista and Robert in the amount of $127,133. After holding a hearing, the magistrate declined to impose punitive damages.

{¶ 7} The McHenrys objected to the magistrate's decision on multiple grounds. In a November 13, 2019 judgment, the trial court made clear that Callista and Robert were jointly and severally liable for $127,133, but it otherwise overruled the objections. The court declared void the deed transferring Callista's interest in real estate to her husband.

{¶ 8} The McHenrys appealed, raising 13 assignments of error. Among the arguments raised were: (1) the allegedly fraudulent transfers of the real estate and the money into bank accounts occurred prior to the probate court lawsuit and, thus, should have been litigated in the probate court case; (2) the trial court erred in failing to grant them a directed verdict because Callista remained in control of all of the financial assets at issue, despite Robert's name being on accounts, and Robert never spent any of the money or made any withdrawals; (3) the verdicts were against the manifest weight of the evidence; and (4) the trial court erred in upholding a jury verdict finding that a transfer of assets from one joint bank account to another joint bank account, with the same owners, can be a fraudulent transfer of funds.

{¶ 9} On January 15, 2021, we affirmed the trial court's judgment. *Mancz v. McHenry*, 2d Dist. Greene No. 2019-CA-74, 2021-Ohio-82. In our Opinion, we rejected the McHenrys' claim that Robert was required to spend or make withdraws from the joint accounts, noting that, under R.C. 1336.04, Mancz was not required to prove that Robert,

the transferee, did anything in particular with the transferred assets. *Id.* at ¶ 58. We also addressed the flow of funds ending in PNC account 0500, stating in part:

* * * [W]e agree with the McHenrys that a transfer of money from a National City joint account between Callista and Robert into a PNC joint account between Callista and Robert would not qualify as a potentially fraudulent transfer under the statute. Based on the evidence before us, we believe the weight of the evidence did not prove that PNC CD account number 0500 was in Robert's name alone. Nevertheless, the evidence was that Callista closed Liberty account 3705 on November 4, 2008 and deposited the proceeds of $56,465.68 in a National City Bank or PNC Bank joint certificate of deposit with Robert, originally bearing account number 4833. At some point, that account became PNC Bank CD account number 0500, which grew to have a balance of $59,025.

The foregoing analysis does not end the inquiry about Liberty account 3705 because the evidence reveals that account 3705 was not a joint account with Robert when it was opened. It was in Callista's name alone. The jury reasonably could have concluded the evidence established a fraudulent transaction with regard to Liberty account 3705 sometime after June 23, 2008. The genesis of the Liberty 3705 account was a Bank One CD purchased with Audrey Kirby's funds.

*Id.* at ¶ 69-70. We ultimately concluded that, because the evidence supported the jury's conclusion that Callista opened Liberty account 3705 in her sole name and it was in her

sole name until at least June 23, 2008, the transfer making the account or its proceeds a joint account with Robert was a transfer within the four-year statute of limitations. *Id.* at ¶ 74.

{¶ 10} Approximately one year later, on January 18, 2022, Robert, pro se, filed a motion for relief from judgment pursuant to Civ.R. 60(B)(5), alleging fraud on the court. Robert asserted that Mancz had acted fraudulently when he attempted to prove that PNC Account 0500 was solely owned by Robert while knowing that the account actually was jointly owned by Robert and Callista. Robert argued that Mancz "withheld exculpatory information" from the court, attempted to solicit false testimony about the ownership of PNC account 0500 from Callista, and ignored the court's request for an exhibit proving the ownership of that account. In support of his motion, Robert attached copies of PNC records that Mancz received on April 16, 2016 (Plaintiff's Exhibit 15), correspondence from Mancz to the McHenrys' counsel from September 15, 2016 (Plaintiff's Exhibit 38), and portions of the January 2019 trial transcript.

{¶ 11} Mancz opposed the motion, arguing that "the suggestion that I had some obligation to direct the Court's attention to every specific element of an exhibit which was clearly in evidence and complete, makes no sense at all." He asserted that Robert's motion was inappropriate because he could have raised the issue at trial, in objections, or on appeal. Mancz further argued that there was no merit to Robert's motion, as the PNC account was created from money that belonged to Kirby and Robert had no right to any of it, whether in a joint account or in his name alone.

{¶ 12} In his reply memorandum, Robert emphasized that Mancz had violated

professional responsibility rules by not highlighting the pages of Exhibit 15 that showed joint ownership of PNC account 0500, that Mancz had improperly raised issues that should have been raised in the probate court action, that Liberty Bank account 3705 was a joint account, that Mancz was making inflammatory statements (such as saying that the McHenrys embezzled together), and that the fraudulent conveyance action should never have been brought.

{¶ 13} On February 22, 2022, the trial court overruled the motion for relief from judgment. The court reasoned that that Robert had failed to establish that he had a meritorious defense to the fraudulent conveyance claim, stating: "The fact that the National City Bank account 4833 and PNC account 0500 were joint accounts is immaterial because the evidence established and the jury could have reasonably concluded that the fraudulent conveyance occurred when the proceeds from Liberty account 3705 were used to fund jointly-held National City Bank account 4833 and later, PNC account 0500." The trial court further concluded that, even if he had raised a meritorious defense, his motion was not brought within a reasonable time, and the evidence did not establish that Mancz had engaged in conduct that would constitute a fraud upon the court.

{¶ 14} Robert appeals the trial court's denial of his Civ.R. 60(B) motion, raising ten assignments of error. We will address them in a manner that facilitates our analysis.

## II. Standard for Motions for Relief from Judgment

{¶ 15} Civ.R. 60(B) permits a court to relieve a party from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;

(4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(5) any other reason justifying relief from the judgment.

Civ.R. 60(B)(1)-(5).

{¶ 16} To prevail on a Civ.R. 60(B) motion, the moving party must establish: (1) a meritorious claim or defense to present if the court grants relief; (2) entitlement to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion was filed within a reasonable time and, when relying on a ground for relief set forth in Civ.R. 60(B)(1), (2), or (3), it was filed not more than one year after the judgment was entered. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus. Each of these elements must be met. *Molnar-Satterfield v. Molnar*, 2d Dist. Greene No. 2020-CA-52, 2021-Ohio-2698, ¶ 13. If the moving party fails to establish any of the requirements, the trial court must overrule the motion. *Id.*, citing *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20, 520 N.E.2d 564 (1988).

{¶ 17} "Civ.R. 60(B) is a remedial rule to be liberally construed so that the ends of

justice may be served." *Kay v. Marc Glassman, Inc.*, 76 Ohio St.3d 18, 665 N.E.2d 1102 (1996). The Rule "represents an attempt to strike a balance between conflicting principles that litigation must be brought to an end and that justice should be done." *Chapman v. Chapman*, 2d Dist. Montgomery No. 21244, 2006-Ohio-2328, ¶ 13; *Aurora Loan Servs., L.L.C. v. Wilcox*, 2d Dist. Miami No. 2009-CA-9, 2009-Ohio-4577, ¶ 12.

{¶ 18} It is well established that Civ.R. 60(B) cannot be used as a substitute for an appeal. *E.g., Cincinnati Ins. Co. v. Schaub*, 2d Dist. Montgomery No. 22419, 2008-Ohio-4729, ¶ 16; *State ex rel. Martin v. Ohio Adult Parole Auth.*, 124 Ohio St.3d 63, 2009-Ohio-6164, 918 N.E.2d 1005, ¶ 1. When the movant "merely reiterates arguments that concern the merits of the case and that could have been raised on appeal," relief under Civ.R. 60(B) is not available. *Deutsche Bank Tr. Co. Americas v. Ziegler*, 2d Dist. Montgomery No. 26287, 2015-Ohio-1586, ¶ 56, quoting *Blount v. Smith*, 8th Dist. Cuyahoga No. 96991, 2012-Ohio-595, ¶ 9.

{¶ 19} We review a trial court's ruling on a Civ.R. 60(B) motion for an abuse of discretion. *Lundeen v. Turner*, Ohio Slip Opinion No. 2022-Ohio-1709, __ N.E.3d __, ¶ 11; *Griffey v. Rajan*, 33 Ohio St.3d 75, 77, 514 N.E.2d 1122 (1987). The term "abuse of discretion" connotes an attitude by the court which is arbitrary, unconscionable, or unreasonable. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

### III. Timeliness of Robert's Motion

{¶ 20} In his eighth assignment of error, Robert challenges the trial court's conclusion that he failed to file his motion within a reasonable time. He emphasizes that

a motion under Civ.R. 60(B)(5) has no time limit, and he states that his motion was filed only 280 days after his appeal to the Ohio Supreme Court was not accepted for review.

{¶ 21} As stated above, for motions made pursuant to Civ.R. 60(B)(1)-(3), the motion must be filed not more than one year after the judgment. Motions under Civ.R. 60(B)(5) do not have such a time limit. However, all motions made pursuant to Civ.R. 60(B) must be made within a reasonable time. Civ.R. 60(B). Whether a motion made under Civ.R. 60(B)(5) has been filed within a reasonable time depends on the facts of the case. *Vitek v. Ward*, 9th Dist. Medina No. 21CA0004-M, 2022-Ohio-1797, ¶ 6. The movant must point to "some operative facts or evidentiary material" to support that the motion is timely. (Citations omitted.) *Id.*

{¶ 22} The trial court entered its judgment on November 13, 2019. Robert's Civ.R. 60(B) motion was not filed until January 18 2022, more than two years later. In his motion, Robert did not explain why his motion was filed within a reasonable time, other than to state that Civ.R. 60(B)(5) has no fixed time limitation.

{¶ 23} Under the facts before us, the trial court reasonably concluded that Robert's motion was untimely. All of the facts underlying Robert's Civ.R. 60(B)(5) motion were known to him when the trial court's judgment was entered, and Robert offered no reason why he waited more than two years to seek vacation of the judgment. Robert now argues that the trial court failed to consider the time required to process an appeal to the Ohio Supreme Court and that he filed his motion only 280 days after the supreme court denied his request for review. However, just as Civ.R. 60(B) cannot be used as a substitute for an appeal, it cannot be held in reserve as a potential avenue for relief when all appeals

have failed. Robert's more than two-year delay while his appeals were pending was not reasonable.

### IV. Fraud on the Court

{¶ 24} Robert further claims that the trial court erred when it concluded that "the evidence also fails to establish that Mancz engaged in conduct that would constitute fraud upon the court."

{¶ 25} A court may grant relief under Civ.R. 60(B)(5), the so-called "catch-all" provision, only in those extraordinary and unusual cases where the moving party demonstrates substantial grounds warranting relief from judgment. *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64, 448 N.E.2d 1365 (1983), paragraph one of the syllabus. "Substantial grounds may exist if the moving party establishes a fraud upon the court." *Molnar*, 2d Dist. Greene No. 2020-CA-52, 2021-Ohio-2698, ¶ 16, citing *Coulson v. Coulson*, 5 Ohio St.3d 12, 448 N.E.2d 809 (1983), paragraph one of the syllabus.

{¶ 26} Fraud upon the court is an "elusive concept." *Coulson* at 15. Nevertheless, the Ohio Supreme Court has cited one commentator's definition with approval: " 'Fraud upon the court' should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by the officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Id.*, quoting 7 Moore, Federal Practice (2d Ed. 1971) 515, ¶ 60.33; *see also Carpenter v. Johnson*, 196 Ohio App.3d 106, 2011-Ohio-4867, 962 N.E.2d 377, ¶ 12 (2d Dist.).

{¶ 27} Several of Robert's assignments of error identify behavior that allegedly

constituted fraudulent behavior by Mancz, but he summarizes his allegations in his tenth assignment of error. There, Robert contends that Mancz perpetuated a fraud on the court in eight ways: (1) withholding "exculpatory" evidence; (2) attempting to induce false testimony from a witness; (3) deceiving the jury; (4) submitted false evidence; (5) failing to answer a question from the magistrate; (6) serving as advocate and witness; (7) repeating the word embezzlement;" and (8) engaging in abusive discovery.

{¶ 28} Most of Robert's complaints relate to Mancz's advocacy of his own case. Robert repeatedly raises that Mancz presented incomplete information to the jury by failing to reference the entirety of Plaintiff's Exhibits 15 and 38 and by failing to offer Plaintiff's Exhibit 5. He also states that Mancz asked Callista leading questions about PNC account 0500 (which is not inappropriate for cross-examination) and argued to the jury that PNC account 0500 was solely owned by Robert. Robert complains that Mancz used pretrial discovery in this action to pursue claims that should have been raised in the prior probate court action. Robert argues that Mancz improperly influenced the jury by repeatedly using the words "embezzle" and "guilty" during the trial. He also asserts that Mancz acted inappropriately by serving as counsel and also testifying as a witness at trial.

{¶ 29} A trial is an adversarial proceeding. *State v. Brown*, 2d Dist. Montgomery No. 24541, 2012-Ohio-1848, ¶ 23. None of Robert's allegations describe behavior that undermined the adversarial process, and to the extent that Robert believed that Mancz's conduct was objectionable, he could have raised those objections in the trial court. Robert has not alleged that Mancz fabricated evidence or failed to disclose relevant information to the McHenrys' attorney. It is clear that Mancz's exhibits were available for

either party's use at trial, and Robert's own attorney could have used those same documents at trial to refute Mancz's contentions regarding the ownership of PNC account 0500 and its predecessor accounts. The trial court did not abuse its discretion in determining that Robert had failed to establish that Mancz engaged in conduct that constituted a fraud on the court.

{¶ 30} We emphasize that all of the facts upon which Robert relies in his motion were part of the record in the McHenrys' direct appeal. The McHenrys could have raised each of Mancz's alleged deficiencies on direct appeal, and they did, in fact, raise some of the same matters then. Notably, we rejected the McHenrys' claim that the allegedly fraudulent transfers occurred prior to the probate court lawsuit and, thus, should have been litigated in the probate case. We also thoroughly addressed whether Callista fraudulently conveyed the funds that ultimately resided in PNC account 0500. In doing so, we stated that, although the manifest weight of the evidence showed that PNC account 0500 was jointly owned (contrary to Mancz's assertion), the evidence revealed that Liberty account 3705 was not a joint account with Robert when it was opened. The probate court previously had found that Callista purchased the 9-month CD at Liberty Savings Bank solely in her name. Robert cannot use Civ.R. 60(B)(5) as an additional appeal of these issues or to raise new arguments that he could have made but failed to make.

### V. Meritorious Defense

{¶ 31} Finally, Robert claims that the trial court erred in concluding that he lacked a meritorious defense to the judgment. He argues that because he and Callista jointly

owned Liberty account 3705, there could not have been a fraudulent transfer when those funds were placed in jointly-owned National City Bank account 4833, which later became PNC account 0500.

{¶ 32} Although Robert's ninth assignment of error expressly addresses his meritorious defense, he challenges the trial court's conclusion in multiple assignments of error. Significantly, Robert's first assignment of error asserts that Liberty account 3705 was not in his wife's name alone and that it was established outside the statute of limitations. He points to Plaintiff's Exhibit 5 (which was not offered at trial), which shows that Callista and Robert jointly opened the Liberty account 3705 with right of survivorship on May 4, 2007. In his second assignment of error, Robert claims that there was no evidence – only inferences – that Liberty account 3705 was fraudulently conveyed.

{¶ 33} Robert acknowledges, however, that the ownership of Liberty account 3705 was previously litigated. Indeed, he asserts that "courts have had 3705 wrong for years. The probate court in its Findings of Fact stated that Liberty account 3705 was solely owned by Callista McHenry." We affirmed the probate court's judgment on appeal. In their direct appeal in this case, the McHenrys again asserted that Liberty account 3705 was opened by Callista on May 4, 2007 (outside the statute of limitations) as a joint certificate of deposit. We determined that "the evidence reasonably supported a conclusion that account 3705 was opened solely in Callista's name and was 'transferred' by being made into a joint account with Robert sometime after June 23, 2008." *Mancz*, 2d Dist. Greene No. 2019-CA-74, 2021-Ohio-82, at ¶ 65. Although Robert disagrees with the prior judicial findings regarding Liberty account 3705, the trial court reasonably

concluded that the ownership of PNC account 0500 was immaterial, because the evidence established, and the jury could have reasonably found, that the fraudulent conveyance occurred when the proceeds from Liberty account 3705 were used to fund jointly-held National City Bank account 4833 and, later, PNC account 0500.

{¶ 34} Robert's assignments of error are overruled in their entirety.

## VI. Frivolous Appeal

{¶ 35} In his appellate brief, Mancz asks us to assess damages against Robert for filing a frivolous appeal. Under App.R. 23, an appellate court may require the appellant to pay reasonable fees if the appellate court determines that the appeal is frivolous. App.R. 23; *Springfield Venture, L.L.C. v. U.S. Bank, N.A.*, 2015-Ohio-1983, 33 N.E.3d 85, ¶ 51 (2d Dist.). A frivolous appeal is one that presents issues lacking arguable merit, which means that, "on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8, citing *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. Upon review, we cannot conclude that Robert's appeal meets this standard. Mancz's request for damages is denied.

## VII. Conclusion

{¶ 36} The trial court's judgment will be affirmed.

. . . . . . . . . . . .

WELBAUM, J. and LEWIS, J., concur.

Copies sent to:

Barry W. Mancz
Robert L. McHenry
Hon. Michael A. Buckwalter